A02A0902. WEBB et al. v. THOMAS TRUCKING, INC. et al.
(566 SE2d 390)

JOHNSON, Presiding Judge.

Debbie and Ricky Webb sued Thomas Trucking, Inc. and its driver, Kenneth Charles Cook, (collectively referred to as Thomas Trucking) for personal injuries and loss of consortium following an automobile collision which occurred in May 1998. Thomas Trucking admitted that its negligence caused the collision, but denied that the collision caused the Webbs' damages. Following a four-day trial on damages, the jury returned a defense verdict. The Webbs appeal, arguing that the trial court erred in (1) refusing to grant a new trial because the evidence did not support the verdict, (2) charging the jury on mitigation of damages, (3) excluding the testimony of Debbie Webb's sister as to the damage done to her vehicle, (4) excluding Ricky Webb's testimony as to the financial condition of the Webbs, and (5) excluding opinion testimony regarding why Debbie Webb had taken such a wide range of drugs since May 1998. Because each of these enumerations of error lacks merit, we affirm the judgment entered upon the jury's verdict.

1. The Webbs first argue that the trial court erred in denying their motion for new trial because the jury was not authorized to return a verdict for Thomas Trucking and because the verdict was inconsistent with the preponderance of the evidence. In reviewing the denial of a motion for new trial on the general grounds, this Court must determine whether there is any evidence to support the jury's verdict, and we must construe the evidence in the light most favorable to the prevailing party.[1]

> It is of no consequence on review of the denial of a motion for new trial based on the sufficiency of the evidence that the evidence adduced at trial would have authorized a verdict for either party. A reviewing court must view the evidence in a light most favorable to upholding the jury's verdict and any evidence which supports the jury's verdict is sufficient

---

[1] *Ga. Power Co. v. Irvin*, 267 Ga. 760, 762 (1) (482 SE2d 362) (1997).

to sustain the trial court's denial of a motion for new trial based on the sufficiency of the evidence.[2]

In addition, this Court may not substitute its judgment for that of the jury and will neither weigh evidence nor determine the credibility of witnesses.[3]

Viewed in this light, the evidence shows that Debbie Webb was a passenger in a car driven and owned by her sister, Glenda Davis. While waiting to make a left-hand turn at an intersection controlled by four-way stop signs, Cook, who was operating a semi-tractor without a trailer, hit their car from behind twice. At trial, Davis described in detail the damage she contended was caused by the impact, including the driver's seat, the rear bumper, the taillights, the trunk lid, and the convertible top. However, she admitted that she drove the car home from the scene, and Debbie Webb testified at trial that she had previously stated in a deposition that Davis' vehicle did not sustain much damage. In addition, Thomas Trucking tendered photographs which reflected minor damage to Davis' car. Both Davis and Webb admitted at trial that they did not complain of any injuries at the scene. Webb admitted she did not go to the emergency room or a doctor's office until five days after the collision, when she reported to work for her normal shift, told her supervisor about the collision, and was directed by her supervisor to be examined by a doctor.

Webb claimed that her neck was injured in this collision and that she had not suffered neck problems prior to the collision. However, the record reveals that Webb had a long history of neck and shoulder problems prior to this collision. According to the record, beginning in 1995, over three years before the collision, Webb started intense treatment with muscle relaxers and painkillers for her neck and shoulder. These medicines included seven prescriptions for Norflex and six prescriptions for Toridal in 1995; thirteen prescriptions for amitriptyline, nine prescriptions for Soma (carisoprodol), and two prescriptions for hydrocodone in 1996; and nine prescriptions for Soma (carisoprodol), nine prescriptions for Effexor, seven prescriptions for Zanaflex, three prescriptions for hydrocodone, and four prescriptions for amitriptyline in 1997. Then, prior to the collision on May 7, 1998, she filled four prescriptions for Effexor, one prescription for Zanaflex, one prescription for hydrocodone, and one prescription for Soma (carisoprodol). In addition, she was also taking Propacet, Levbid, Baclofen, Ultram, Orasome, amitriptyline, and ibuprofen prior to the collision.

[2] (Citations and punctuation omitted.) *High v. Parker*, 234 Ga. App. 675, 676 (1) (507 SE2d 530) (1998).

[3] *Stubbs v. Harmon*, 226 Ga. App. 631, 632 (1) (487 SE2d 91) (1997).

The record also reveals that between 1995 and the date of this collision, Webb saw a number of doctors for her neck and shoulder, including Dr. Bill Naguszewski, a neurologist, and Dr. Joel Hoag. Both doctors have extensive references to neck problems in their medical notes. According to Dr. Naguszewski, Webb first appeared to him complaining of numbness in her right thumb and index finger, pain in her right arm and shoulder, and neck symptoms for two years. He testified that he treated Webb's neck on numerous occasions prior to the collision. In fact, he prescribed cervical traction in hopes of alleviating the nerve impingement in her neck, and his September 16, 1996 medical records note the "patient returns today and has not been faithful with cervical traction but does have cervical traction unit at home. When she uses the cervical traction, there is a definite improvement in her neck pain."

While Webb attempted to convince the jury that her pain was getting better prior to the collision, even her sister testified that "it was slowly going downhill" even before the collision. And Dr. Naguszewski testified that Webb called his office on April 29, 1998, complaining of increased pain and symptoms and requesting some medication. Webb was filling prescriptions for muscle relaxers and pain medication just days before the collision occurred. Following the collision, Webb did not call Dr. Naguszewski to move up the appointment she had made a month earlier. She simply reported as scheduled. An MRI performed on May 16, 1998, nine days after the collision, revealed bone spurs in the area of Debbie Webb's neck that Dr. Naguszewski had concerns about in 1996. According to Dr. Naguszewski, bone spurs suggest that there has been excessive wear and tear in the area; they could not have been a result of the collision because it would take longer than nine days for bone spurs to develop.

Between May 14, 1998 (the date upon which Dr. Naguszewski first saw Webb after the automobile collision), and September 1998, no additional treatment or examinations were performed other than the MRI which showed the pre-existing bone spurs and normal office examinations. However, in September 1998, Webb visited Six Flags Over Georgia, an amusement park, and rode "The Georgia Cyclone" ("the Cyclone"), a roller coaster. Immediately thereafter, she reported "urgently" to Dr. Naguszewski that she had serious and severe neck pain after riding the Cyclone. Following her ride on the Cyclone, Webb's condition began to deteriorate, and she received her first epidural injection for the pain. Dr. Naguszewski testified that much of the exacerbation was due to depression and stress in Webb's family life.

In December 1998, Webb began treatment with Dr. Douglas Laipple, who specializes in pain management and psychiatry. Dr.

Laipple testified that Webb never told him that she experienced problems with her neck after riding the Cyclone. In addition, she never told Dr. Laipple or his successor, Dr. Windsor, that she had been treated with cervical traction before the collision. According to Dr. Laipple, Webb suffered from major depression. He acknowledged that Webb had many things on her mind, including having surgery for her gallbladder or kidney stones and having to take a number of months off work to care for her daughter after a serious car accident.

In the summer of 2000, Webb was forced to take leave from her job until she could control the amounts of drugs she was taking. Webb was taking anti-depressants, narcotic analgesics, anti-anxiety drugs, anti-psychotic drugs, and muscle relaxers. The combination of these medications made her drowsy and slow to respond at work. Even Webb was concerned that she had become addicted to the narcotic analgesic.

(a) The Webbs contend that the trial court erred in not interfering with the jury's zero verdict because the jury was not authorized to return a verdict for Thomas Trucking. According to the Webbs, Thomas Trucking's admission that Cook's negligence caused the collision requires an award of monetary damages. This argument lacks merit. Before damages can be awarded, a plaintiff must prove that her damages were proximately caused by the defendant's negligence.[4] Viewed in the light most favorable to the verdict, there clearly was evidence from which the jury could have concluded that the Webbs' damages were not the result of Thomas Trucking's negligence. Instead, the jury could have concluded that the damages were proximately caused by Debbie Webb's pre-existing injuries, her ride on the Cyclone, and/or stress in her personal life. Accordingly, the trial court did not err in approving the jury's verdict on this ground.

(b) The Webbs next argue that the trial court erred in not interfering with the jury's verdict because the verdict was inadequate and inconsistent with the preponderance of the evidence. It is well established that a jury's award cannot be successfully attacked so as to warrant a new trial unless it is so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake on the part of the jurors.[5] Moreover, the trial court's approval of the verdict creates a presumption of correctness that will not be disturbed absent compelling evidence.[6] Here, although the evidence might have supported a verdict for the Webbs, the jury found otherwise, and since there was evidence to support

---

[4] See *Heston v. Lilly*, 248 Ga. App. 856, 857-858 (1) (546 SE2d 816) (2001); *Dietz v. Becker*, 209 Ga. App. 678-679 (2) (434 SE2d 103) (1993).

[5] *Turpin v. Worley*, 206 Ga. App. 341, 343 (1) (425 SE2d 895) (1992).

[6] Id.

that determination, the trial court did not err in denying the Webbs' motion for new trial.[7] The question of damages was for the jurors, who weighed the evidence and determined the credibility of the witnesses.[8]

2. The Webbs argue that the trial court erred in instructing the jury regarding mitigation of damages. According to the Webbs, mitigation of damages was an improper charge because Debbie Webb "had no knowledge that either riding an amusement ride or not proceeding to the hospital would have lessened her damages." However, it is not necessary here to decide whether the jury charge was improper. Because the jury declined to award any damages whatsoever, this charge was not harmful even if it was error.[9]

3. The trial court properly excluded testimony from Davis regarding opinion evidence as to the monetary value of the physical damage to her vehicle as a result of the collision. We first note that Davis was permitted to testify regarding the damage her vehicle sustained and the amount paid to repair part of the damage. She was simply not permitted to testify regarding her opinion of a monetary amount of damages. We find no error. Not only was the value of the alleged damage irrelevant in the Webbs' personal injury action, but the Webbs failed to establish a proper foundation to permit Davis to testify as to a monetary value.[10] There was no evidence that Davis appraised damage to vehicles, repaired vehicles, or performed any other action that would provide her with experience in giving an estimate of a monetary value for damages.

4. The Webbs contend that the trial court erred in excluding testimony relating to their financial condition. We disagree. Evidence of the wealth or worldly circumstances of either party is inadmissible, except in those cases where position or wealth is necessarily involved.[11] In this case, evidence of the Webbs' financial condition or their financial resources was irrelevant to the issue of damages.[12] The trial court properly excluded testimony regarding the Webbs' concern over the payment of bills and their financial condition.[13]

5. The Webbs contend that the trial court erred in excluding Eric Erwin's opinion as to reasons Debbie Webb took such a wide range of

---

[7] See *High*, supra at 677 (1).

[8] *Hammond v. Lee*, 244 Ga. App. 865, 869 (5) (536 SE2d 231) (2000).

[9] See *Burchfield v. Madrie*, 241 Ga. App. 39, 42 (4) (524 SE2d 798) (1999); *Minter v. Leary*, 181 Ga. App. 801 (1) (354 SE2d 185) (1987) (physical precedent only).

[10] See *Johnson v. Knebel*, 267 Ga. 853 (485 SE2d 451) (1997).

[11] *Allstate Ins. Co. v. Brannon*, 214 Ga. App. 300, 303 (4) (447 SE2d 666) (1994).

[12] See *Worthy v. Kendall*, 222 Ga. App. 324, 325-326 (1) (474 SE2d 627) (1996); compare *McGee v. Jones*, 232 Ga. App. 1, 3 (2) (499 SE2d 398) (1998) (evidence that plaintiff could not afford recommended surgery was admissible to show why she did not have the recommended surgery).

[13] See *Warren v. Ballard*, 266 Ga. 408, 410 (2) (467 SE2d 891) (1996).

drugs since the collision. The record shows that Erwin is a pharmacist who does not hold a medical degree or practice medicine. In addition, he never filled prescriptions for Debbie Webb and never personally met her. However, the Webbs called him to testify about the strength of certain medications, their effects when taken alone or with other medications, and the uses of a variety of medications. This line of questioning was within Erwin's expertise. However, when the Webbs attempted to ask Erwin questions regarding why certain medications were prescribed by certain doctors for Webb, the trial court sustained Thomas Trucking's objections. The trial court correctly excluded this testimony. The question of whether a witness is qualified to give his opinion as an expert on a particular issue is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion.[14]

As a pharmacist, Erwin was clearly qualified to testify as to the effects of the drugs prescribed to Debbie Webb and as to the conditions the drugs would treat. However, no evidence indicated that Erwin had any firsthand knowledge about Debbie Webb's medical conditions or any possible treatment for these conditions. Thus, any testimony by Erwin regarding why a doctor prescribed or did not prescribe a certain medication was speculative and not within Erwin's expertise as a pharmacist. We agree with the trial court that there was an insufficient showing of Erwin's competence to qualify him to testify as an expert with regard to the care and treatment of Debbie Webb.[15] Direct evidence from the doctors to explain their course of treatment was properly admitted.

Moreover, any opinion formed by Erwin based on his review of Webb's medical records is hearsay. "Not even an expert can give an opinion based entirely upon reports which have been prepared by others and which are not in evidence. . . . A testifying expert is not to serve as a conduit for the opinions of others."[16] Here, Erwin had no personal knowledge of the facts of the case other than through hearsay.[17] The trial court did not err in excluding this line of questioning.

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

---

[14] See *Chandler Exterminators v. Morris*, 262 Ga. 257, 258-259 (3) (c) (416 SE2d 277) (1992); *Williamson v. Harvey Smith, Inc.*, 246 Ga. App. 745, 748 (3) (542 SE2d 151) (2000).

[15] See *Goring v. Martinez*, 224 Ga. App. 137, 139 (2) (b) (i) (479 SE2d 432) (1996).

[16] (Citations and punctuation omitted.) *Leonard v. State*, 269 Ga. 867, 871 (3) (506 SE2d 853) (1998); see *Carlson v. State*, 240 Ga. App. 589, 590 (2) (524 SE2d 283) (1999).

[17] See *Goring*, supra at 140 (2) (b) (ii).

DECIDED JUNE 4, 2002.

*Jones & Ledbetter, Howard W. Jones*, for appellants.
*Cowan, Plumley & Bucci, Robert A. Cowan*, for appellees.