### A08A1146. HORTON v. HENDRIX et al.
(662 SE2d 227)

BLACKBURN, Presiding Judge.

In this action alleging that a trust agreement and related deeds were executed as a result of undue influence, plaintiff Susan Horton appeals the jury's verdict and resulting judgment that the signatory was not unduly influenced. She argues that the court improperly instructed the jury and erred in several evidentiary rulings. Discerning no error, we affirm.

Construed in favor of the verdict, *R. O. C. v. Estate of Bryant,*[1] the evidence shows that Susan was one of three adult children born to her parents. After her father died, Susan became dissatisfied with her mother's administration of the father's estate and petitioned the probate court to remove the mother as executrix of the estate. That suit was settled through an agreement in which Susan conveyed to the mother any rights Susan had to the father's estate in exchange for an income-producing property from the estate.

Upset over Susan having brought the suit against her, and convinced that Susan had now received a fair inheritance from her parents' assets, the mother in 1987 executed a first will in which Susan would receive only a very small portion of the mother's personal assets (with nothing to come from those assets inherited by

---

[6] *Ferrell v. State,* 256 Ga. App. 692, 694 (1) (569 SE2d 899) (2002).
[1] *R. O. C. v. Estate of Bryant,* 279 Ga. App. 652, 653 (1) (632 SE2d 429) (2006).

the mother from the father). Based on similar considerations, the mother in 1995 executed a second will, this time giving all of the estate to her son George Hendrix, Jr., with nothing to Susan or to the mother's other daughter. The mother had an oral understanding with George that he would care for the other daughter from the estate's assets.

In 1996, the mother contacted and worked directly with her attorney to have him draw up a power of attorney that gave George power to handle all her affairs, which she then executed on her own. After extensive discussions and negotiations with her attorney, the mother in 1997 had the attorney prepare a trust document, creating a revocable inter vivos trust with George as trustee. The trust document repeated her feeling that Susan had already received her inheritance and accordingly provided that the trust would be operated for the benefit of the mother, George, and George's son, and further provided that upon the mother's death, the trust would convey all its assets to George. Simultaneous with the execution of the trust in May 1997, she executed two deeds conveying her extensive real property holdings into the trust and further executed a third will that devised all of her estate to the trust. George's agreement to care for the other daughter continued.

In 1998, the mother was diagnosed with Alzheimer's disease. In 2001, she moved into a nursing home, and in 2003, she passed away. Pursuant to the terms of the trust, the trust's assets were all conveyed to George that same year. He kept his promise to care for the other daughter.

In 2005, Susan petitioned the probate court to compel George to probate the three wills of the mother, which resulted in the probate court requiring George to file all three wills with the court. Following an evidentiary hearing, that court concluded that the 1997 third will controlled and that no probate of that will was required since the express intent of the mother was to transfer all of her personal and real property through the trust. Susan appealed this judgment to the superior court and then also filed a separate action in that court (against George and George's son) to set aside the trust agreement and the two deeds conveying assets into that trust. Susan asserted that the mother lacked the capacity to enter the agreement and to execute the deeds, and that George (as the mother's fiduciary under the 1996 power of attorney) unduly influenced the mother in her execution of these documents. Per the parties' joint request, the superior court consolidated (i) the appeal of the will probate action and (ii) the action to void the trust agreement and related deeds.

At the end of the jury trial before the superior court, the parties agreed that the only issue before the jury was whether George had unduly influenced his mother to execute the 1997 trust agreement

and the two 1997 deeds conveying property into that trust. The jury found that the mother was not unduly influenced, and judgment was entered accordingly. Susan appeals, contending that the trial court erred in its jury charges and in its evidentiary rulings.

1. *Jury instructions.* Susan first contends that the trial court erred in instructing the jury by giving some misleading charges and by failing to give some of her requested charges. "In reviewing an allegedly erroneous jury instruction, we apply the 'plain legal error' standard of review." *McWilliams v. State.*[2]

(a) *Burden of proof.* Susan first argues that the trial court erred when it instructed the jury that

> [t]he plaintiff has the burden of proof, which means that she must prove whatever it takes to make out her case except for any admissions by the defendants in their pleadings or in open court. The plaintiff must prove her case by a preponderance of the evidence. . . .

Citing *Parker v. Spurlin*[3] and *Trustees of Jesse Parker Williams Hosp. v. Nisbet*,[4] Susan reasons that where the evidence shows that a person in a weakened mental condition transfers assets to a dominant party who is in a confidential relationship with the weakened grantor, a presumption of undue influence in the transaction arises, which places the burden of showing the absence of an undue influence upon the grantee. She points out that she presented some evidence — though contradicted by George — that the mother was in a weakened mental state in 1997 (memory loss, confusion, loss of sense of time, possible early onset of Alzheimer's), at which time George was her dominant fiduciary in that he had a general power of attorney to manage all her affairs. Because a presumption of undue influence would arise under these circumstances, she claims she did not bear the burden of persuasion on the issue of undue influence.

Susan misapprehends the legal effect of presumptions under Georgia civil law. As stated in *Nisbet*, if one party introduces "evidence of circumstances which under the law causes a presumption of undue influence to arise, *the burden of going forward with the evidence* shift[s] to the [other party]." (Emphasis supplied.) Supra, 191 Ga. at 840 (5). Thus, the burden being shifted to the other party is the burden to produce evidence rebutting the presumption (which George produced here); it is *not* the ultimate burden of persuasion,

---

[2] *McWilliams v. State*, 287 Ga. App. 585, 587 (651 SE2d 849) (2007).

[3] *Parker v. Spurlin*, 227 Ga. 183, 187-188 (3) (179 SE2d 251) (1971).

[4] *Trustees of Jesse Parker Williams Hosp. v. Nisbet*, 191 Ga. 821, 840 (5) (14 SE2d 64) (1941).

which never shifts from the party asserting the claim of undue influence. *Miller v. Miller*[5] explained:

> Concerning the effect of a presumption on the burden of proof, the rule, generally, is that while a presumption operating in favor of the party having the ultimate burden of persuasion requires the opposing party to go forward with evidence rebutting the presumption, it does not shift the original burden of persuasion. That burden remains with the party upon whom it was originally cast.

(Footnote omitted.)

Thus, the trial court correctly instructed the jury that Susan as the party asserting the claim of undue influence bore the ultimate burden of persuasion on this matter, despite the presumption of undue influence that might arise regarding property transfers to dominant fiduciaries from weakened grantors. The jury was thoroughly instructed on this presumption and its ramifications and was given the proper framework in which to decide the case based on the evidence presented from both sides. We discern no error.

(b) *Susan's requested jury charges.* Susan complains that five of her requested jury charges (Charge Nos. 1 through 5) were not given by the trial court, which requires reversal. We disagree.

Regarding Charge Nos. 1 and 5, we note that following the court's instructions to the jury, Susan raised no objection to the court's alleged failure to give these written charges. Although a civil party need not, following the court's instructions to the jury, restate the specific grounds for an objection when objecting to the court's failure to give a requested written jury charge, nevertheless "all objections regarding a jury charge must be made on the record after the jury has been instructed. . . ." *Golden Peanut Co. v. Bass*.[6] Failure to do so waives the matter on appeal. Id. See OCGA § 5-5-24 (a).

Regarding Charge Nos. 2, 3, and 4, we hold that the trial court instructed the jury sufficiently on the principles covered by these charges.

> It is axiomatic that a jury charge need not be given in the exact language requested if the charge as given clearly covers the circumstances of the case. All that is necessary, provided the requested charge accurately states the relevant principles of law, is that these principles be fairly given to the jury in the general charge. When it can be

---

[5] *Miller v. Miller*, 258 Ga. 168, 169 (2) (366 SE2d 682) (1988).

[6] *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 233 (2) (547 SE2d 637) (2001).

determined that the charge actually given conveys correctly the intent of the law and is so framed as to be applied with understanding to the fact situation, denial of a request for a specific charge is not reversible error.

(Citations and punctuation omitted.) *Hitchcock v. Key*.[7] See *Imperial Foods Supply v. Purvis*.[8]

Charge No. 2 specified the ways that the jury might find undue influence generally was exercised; Charge No. 3 focused on ways that the jury might find that George in this particular trust agreement may have exercised undue influence; and Charge No. 4 instructed on the presumption of undue influence where a conveyance to a dominant fiduciary is executed by one with a weakened mind. The relevant legal principles in each of these requested charges were fairly covered, albeit in somewhat different language, in the court's instructions to the jury. We discern no error. See *Fowler Properties v. Dowland*.[9]

2. *Evidentiary rulings*. Susan complains that the trial court erred in several of its evidentiary rulings. We review these complaints under the following standard of review: "Absent clear abuse, the trial court's exercise of discretion in admitting or refusing to admit evidence is entitled to deference." (Punctuation omitted.) *Morrison v. Morrison*.[10]

(a) *Admission of three wills*. Susan first contends that the trial court abused its discretion in admitting the three wills executed by the mother; Susan claims the wills were irrelevant to any issue at trial. This claim is surprising since Susan joined in the request (granted by the superior court) to consolidate Susan's appeal of the probate of these wills with her separate action to void the trust agreement and related deeds, and since Susan in her portion of the pre-trial order here set forth (as an issue for jury determination) "[w]hether the alleged wills of [the mother] made prior to her death should be delivered up and declared null and void."

Moreover, these wills were relevant to the issue of whether the trust agreement was executed as a result of undue influence. The jury may consider a "broad range of circumstantial evidence" in determining whether an instrument was executed as a result of undue influence. *Cook v. Huff*.[11] Indeed, the Supreme Court of Georgia "has encouraged admitting a 'wide latitude' of evidence

---

[7] *Hitchcock v. Key*, 163 Ga. App. 901, 903-904 (3, 4) (296 SE2d 625) (1982).

[8] *Imperial Foods Supply v. Purvis*, 260 Ga. App. 614, 619 (6) (580 SE2d 342) (2003).

[9] *Fowler Properties v. Dowland*, 282 Ga. 76, 81 (5) (646 SE2d 197) (2007).

[10] *Morrison v. Morrison*, 282 Ga. 866, 867 (2) (655 SE2d 571) (2008).

[11] *Cook v. Huff*, 274 Ga. 186, 188 (2) (552 SE2d 83) (2001).

where . . . the issue of undue influence has been raised." *Bishop v. Kenny*.[12] Thus, prior wills may be admitted in cases alleging that the testator was unduly influenced in executing the will in question. See id. at 233 (3) (earlier wills may throw light "on the question of undue influence in procuring the subsequent will"); *Ambler v. Archer*.[13]

Here, the earlier wills exhibited and explained the mother's intent to minimize if not completely exclude Susan's participation in the mother's assets at times when even Susan admits that the mother was under no undue influence. The third will executed simultaneously with the trust agreement reaffirmed this intent. We discern no abuse of discretion in the trial court's admitting these three wills as relevant to the question of undue influence in the execution of the trust agreement and related deeds.

Nevertheless, Susan points out that because the capacity to contract is a higher standard than the capacity to make a will (OCGA § 53-4-11 (b)), the jury may have erroneously considered the mother's capacity to make these wills in determining whether the mother had the capacity to execute the trust agreement and related deeds. Susan apparently forgets that she expressly conceded at the end of trial that the mother's capacity to execute the trust agreement and related deeds was no longer an issue before the jury; indeed, counsel for both sides (as well as the court) then emphasized to the jury that capacity to enter the trust agreement and related deeds was not an issue to be determined. Susan's argument simply does not apply.

(b) *Exclusion of portion of granddaughter's testimony*. Susan complains that her daughter (a granddaughter to Susan's mother) was not allowed to testify that Susan's mother commented to the granddaughter that the mother was unaware of a change in a medical appointment and that such was apparently because "they [did not] want anyone to know what's going on." The court sustained the objection to this testimony because it did not fit the hearsay necessity exception. See OCGA § 24-3-1 (b). We discern no error.

"In order for hearsay to be admitted under the necessity exception to the hearsay rule, it must be established that the testimony is necessary, that it has particular guarantees of trustworthiness, and that the hearsay statements are probative." (Punctuation omitted.) *Zaglin v. Atlanta Army Navy Store*.[14] We discern no abuse of discretion in the trial court's implicit finding that this alleged statement to the granddaughter, who certainly had an

---

[12] *Bishop v. Kenny*, 266 Ga. 231, 232 (3) (466 SE2d 581) (1996).
[13] *Ambler v. Archer*, 230 Ga. 281, 290-291 (2) (196 SE2d 858) (1973).
[14] *Zaglin v. Atlanta Army Navy Store*, 275 Ga. App. 855, 856 (1) (622 SE2d 73) (2005).

interest in seeing her mother Susan benefit from the admission of this testimony, lacked sufficient trustworthiness. Cf. *Todd v. State*[15] (applying abuse of discretion standard to trustworthiness determination).

(c) *Exclusion of portion of testimony of mother's sister-in-law.* Susan argues that the trial court abused its discretion in excluding testimony from the mother's sister-in-law that the conveying of all the mother's assets to George as reflected in the trust agreement and related deeds was contrary to the mother's statements to the sister-in-law that the mother intended to distribute her assets equally among her three children. However, although the court initially sustained an objection to this testimony as hearsay, the sister-in-law later did testify to this effect. Moreover, at least three other witnesses testified to this same effect. Since this evidence eventually came in not only through the sister-in-law but also through several other witnesses, we can discern no harm in its initial exclusion (assuming its initial exclusion were error). See *Smith v. Stacey*[16] (without harm, there is no reversible error).

(d) *Exclusion of expert opinion.* Susan contends that the trial court abused its discretion in excluding that portion of her medical expert's testimony that was based solely on unadmitted medical records of the mother. We discern no abuse.

> [A]ny opinion formed by [the expert] based on his review of [the mother's] medical records is hearsay. Not even an expert can give an opinion based entirely upon reports which have been prepared by others and which are not in evidence. A testifying expert is not to serve as a conduit for the opinions of others.

(Punctuation omitted.) *Webb v. Thomas Trucking, Inc.*[17] See *Andrews v. Major.*[18]

(e) *Admission of cross-examination testimony regarding documents later introduced.* Finally, Susan claims that the trial court abused its discretion in allowing George to cross-examine a witness about documents which were authored by the mother but which were not formally authenticated and introduced until later in the trial. Once again, we discern no abuse. Where a proper foundation

---

[15] *Todd v. State*, 274 Ga. 98, 100 (3) (549 SE2d 116) (2001).

[16] *Smith v. Stacey*, 281 Ga. 601, 602 (1) (642 SE2d 28) (2007).

[17] *Webb v. Thomas Trucking, Inc.*, 255 Ga. App. 637, 642 (5) (566 SE2d 390) (2002).

[18] *Andrews v. Major*, 180 Ga. App. 393, 395 (2) (349 SE2d 225) (1986).

for evidence is afterward laid during the trial, there is no harm in allowing a party to use that evidence earlier in the trial. See *Conant v. Jones.*[19]

3. In the body of their appellate brief, George and his son move for sanctions against Susan and her counsel for a frivolous appeal. However, "[n]o motions shall be filed in the body of briefs. . . ." Court of Appeals Rule 41 (b). Accordingly, that motion is dismissed.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED MAY 5, 2008 

*Philips & Kitchings, Richard Phillips, J. Alvin Leaphart*, for appellant.

*Arnold, Stafford, Randolph & Schaeffer, Jeffery L. Arnold, H. Craig Stafford, Tyler L. Randolph*, for appellees.

---

[19] *Conant v. Jones*, 120 Ga. 568, 571 (4) (48 SE 234) (1904).