**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 16, 2015**

# In the Court of Appeals of Georgia

A14A1854. HAND et al. v. SOUTH GEORGIA UROLOGY CENTER, P.C. et al.

DILLARD, Judge.

In this civil action, George and Betty Hand sued Dr. Gilbert Gonzalez and his practice group, South Georgia Urology Center, P.C. (collectively "defendants"), for damages they allegedly suffered as a result of Dr. Gonzalez's medical malpractice. Following a jury verdict and judgment in favor of defendants, the Hands appeal, arguing that the trial court erred in (1) excluding impeachment evidence, (2) failing to instruct the jury on the law pertaining to spoliation of evidence, (3) prohibiting cross-examination of Dr. Gonzalez regarding the past suspension of his medical license, and (4) finding that sufficient evidence supported the jury's verdict. For the reasons noted *infra*, we agree that the trial court erred in excluding impeachment

evidence, and therefore, reverse the trial court's ruling in that regard and remand the case for a new trial.

Construed in favor of the jury's verdict,[1] the evidence shows that in late 2005, Dr. Gonzalez, a urologist, diagnosed George Hand as having an enlarged prostate. And after discussing various treatment options, Dr. Gonzalez ultimately recommended transurethral microwave thermotherapy, using a Targis System device manufactured by Urologix, Inc. In this procedure, the physician places the Targis device's catheter, housing a microwave antenna, into the patient's urethra near the prostate gland and inserts the device's rectal thermometer into the patient's rectum directly adjacent to the prostate gland. The antenna then delivers microwave energy into the patient's prostate, causing cellular breakdown that leads to a reduction in the size of the prostate. During the procedure, the rectal thermometer monitors the temperature of the prostate gland and automatically halts the procedure if the temperature exceeds acceptable levels.

Based on Dr. Gonzalez's recommendation, Hand consented to the microwave thermotherapy. Consequently, on January 19, 2006, Hand went to Dr. Gonzalez's offices, where one of the nurses prepped him and then inserted the Targis device's

---

[1] *See, e.g.*, *Horton v. Hendrix*, 291 Ga. App. 416, 416 (662 SE2d 227) (2008).

catheter into Hand's urethra and the rectal thermometer into his rectum. After Dr. Gonzalez checked the placement of both insertions, he activated the device.

During the procedure, Hand informed Dr. Gonzalez's assistants that he was experiencing a considerable amount of pain. But the device's rectal thermometer never indicated that the temperature exceeded safe levels, and Hand never requested that the assistants stop the treatment. Nearly 45 minutes later, the procedure concluded with no apparent complications, and Dr. Gonzalez sent Hand home to recuperate.

After resting for approximately two weeks following the procedure, Hand was still experiencing discomfort, but he nevertheless attempted to return to his job as a truck driver. However, on his first day back, Hand noticed that he discharged urine from his rectum when trying to use the bathroom. Almost immediately, Hand contacted Dr. Gonzalez, who quickly saw him on February 10, 2006, and determined that the microwave thermotherapy procedure had burned a hole between Hand's rectal and urethral tissues, causing what is known as a rectal-urethra fistula. A short time later, Hand was admitted to the hospital for surgery to repair the fistula, and over the course of the next couple of years, he underwent numerous surgeries and procedures to treat the damage and complications resulting from the injury.

In 2008, Hand and his wife filed a complaint against Dr. Gonzalez and his practice group, alleging that Dr. Gonzalez breached the standard of medical care in treating Hand and that this breach resulted in serious injuries. Specifically, the Hands claim that Dr. Gonzalez failed to ensure that the Targis device's rectal thermometer was properly inserted near Hand's prostate gland prior to the microwave thermotherapy procedure and, thus, the thermometer did not indicate that Hand's urethral and rectal tissue were being subjected to dangerous temperature levels. Defendants then filed an answer, and a lengthy discovery period ensued.

During discovery, the Hands' counsel deposed Dr. Gonzalez, who testified that he did not breach the standard of medical care in his treatment of Hand. Dr. Gonzalez further testified that he believed the Targis device malfunctioned during Hand's treatment and that this malfunction resulted in the burns to Hand's tissue. Dr. Gonzalez added that he believed he had attempted to perform microwave thermotherapy treatment once or twice after Hand's procedure, but the device would not operate properly. Then, after learning of Hand's injury, he "lost faith" in the Targis device and stopped using it completely by late February or early March 2006.

A jury trial commenced on April 26, 2013, during which the Hands presented evidence that Dr. Gonzalez breached the standard of medical care. Defendants

presented evidence that Dr. Gonzalez adhered to the standard of medical care, including expert testimony supporting his theory that the Targis device malfunctioned and caused Hand's injury. The trial concluded on May 3, 2013, with the jury rendering a verdict in favor of the defendants. One week later, the trial court affirmed the verdict and issued an order entering judgment. Subsequently, the Hands filed a motion for new trial, which the trial court denied after conducting a hearing. This appeal follows.

1. The Hands contend that the trial court erred in excluding evidence that was relevant to the impeachment of Dr. Gonzalez. We agree.

It is well established that the admission of evidence is "within the sound discretion of the trial court and appellate courts will not interfere absent abuse of that discretion."[2] But it is likewise well established that evidence having a tendency to establish facts at issue is "relevant and admissible, and no matter how slight the probative value, our law favors admission of relevant evidence."[3] With these guiding principles in mind, we turn now to the Hands' specific claim of error.

---

[2] *City of Atlanta v. Bennett*, 322 Ga. App. 726, 727 (1) (746 Ga. App. 198) (2013) (punctuation omitted).

[3] *Id.* at 728 (1) (punctuation omitted).

Despite Dr. Gonzalez's deposition testimony (mentioned *supra*), during the course of discovery, the Hands never requested to inspect the Targis device used to treat Hand. However, a few weeks before trial was scheduled to begin, the Hands served Dr. Gonzalez with a subpoena duces tecum, requesting that the device be brought to trial solely for demonstrative purposes. And at the start of trial, the Targis device that the parties assumed to be the device used to treat Hand was indeed brought to the courtroom. Later, during a break in the proceedings, and after the Hands rested, the Hands' counsel activated the power on the Targis device and discovered reports in the form of data on the device, indicating that, contrary to his deposition testimony, Dr. Gonzalez used the device to treat six other patients over the course of several months *after* he determined that Hand suffered injuries as a result of the microwave thermotherapy procedure. The Hands' counsel immediately brought this information to the trial court's attention and requested, *inter alia*, that the data be printed out and admitted as impeachment evidence. But focusing on the fact that the Hands' counsel never requested to inspect the device during discovery, the trial court denied this request.

Subsequently, Dr. Gonzalez testified in his own defense. And during cross-examination, despite the Hands' counsel's questions about the additional apparent

6

microwave thermotherapy treatments administered after he learned of Hand's injury, Dr. Gonzalez maintained that he only attempted to perform this type of treatment once or twice in the period of time between his treatment of Hand and learning of Hand's injury. In addition, Dr. Gonzalez testified that, based on documents found in his office records the previous evening, he learned that the Targis device currently in the courtroom—while the identical model—was not the same machine he used to treat Hand. Rather, that specific device had been retrieved by Urologix on March 22, 2006, and replaced with the current device.

Based on this testimony, the Hands' counsel again sought to print out and introduce the data showing that six microwave thermotherapy treatments were performed after Dr. Gonzalez learned of Hand's injury, but the trial court once again ruled that any data from the Targis device should have been the subject of a discovery request. The trial court allowed the Hands' counsel to further question Dr. Gonzalez regarding the replacement Targis device, but during that cross-examination, Dr. Gonzalez maintained that he did not think he used the device on any patients after learning of Hand's injury.

The Hands argue that the data from the Targis device discovered during trial was admissible to impeach Dr. Gonzalez, and that the trial court's exclusion of this evidence was harmful. As noted *supra*, we agree.

Under OCGA § 24-1-1, "[t]he object of all legal investigation is the discovery of truth. . . . ."[4] And consistent with this statutory mandate, "the policy of Georgia law is to admit evidence, even if its admissibility is doubtful, because it is more dangerous to suppress the truth than to allow a loophole for falsehood."[5] Toward that end, OCGA § 24-6-607 states that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." Additionally, OCGA § 24-6-621 provides that, "[a] witness may be impeached by disproving the facts testified to by the witness." Moreover, a trial court may admit evidence relevant to the issue of impeachment even if "the evidence would not qualify for admission on other grounds."[6]

---

[4] As previously noted, this case was tried in April and May 2013, and, therefore, the new Evidence Code was applicable. *See* Ga. Laws 2011, p. 99, § 101.

[5] *Ballard v. Meyers*, 275 Ga. 819, 821 (572 SE2d 572) (2002) (punctuation and citation omitted); *accord Gibbons v. Maryland Cas. Co.*, 114 Ga. App. 788, 796 (152 SE2d 815) (1966).

[6] *Bolah v. Driskell*, 318 Ga. App. 405, 407 (734 SE2d 108) (2012); *accord Pouncey v. Adams*, 206 Ga. App. 126, 127 (424 SE2d 376) (1992).

8

In the case *sub judice*, the data from the Targis device seemingly showed that, contrary to his testimony in his deposition and at trial, Dr. Gonzalez did, in fact, use the device—or an identical one—to treat six more patients *after* he learned of Hand's injury and allegedly "lost faith" in the device's ability to function properly. Defendants nevertheless assert that the trial court's decision to exclude this evidence was correct because whether Dr. Gonzalez used the Targis device to treat other patients ultimately has no bearing on whether he breached the standard of medical care in treating Hand. We disagree.

While it is true that a witness may not be impeached because of a discrepancy as to a wholly immaterial matter, "a witness may be impeached on a collateral issue which is indirectly material to the issue in the case."[7] Here, whether the Targis device was functioning properly—and perhaps more importantly whether Dr. Gonzalez actually believed that it was functioning properly—was certainly material to an issue in the case. In fact, Dr. Gonzalez's primary defense was that the device

---

[7] *Barngrover v. Hins*, 289 Ga. App. 410, 412 (1) (657 SE2d 14) (2008) (punctuation omitted); *see also Ballard*, 275 Ga. at 821-22 (holding that trial court's ruling that excluded relevant impeaching evidence and allowed the credibility of a crucial witness to go unchallenged because document was not listed in the pretrial order was error); *Smith v. State*, 190 Ga. App. 6, 7 (2) (378 SE2d 349) (1989) ("Generally, a party may show anything which in the slightest degree affects the credit of an opposing witness." (punctuation omitted)).

malfunctioned, and the sole focus of the testimony of Dr. Gonzalez's mechanical engineering expert was an explanation of her examination of the device and her theory as to how the device could have malfunctioned to cause Hand's injury.

Furthermore, the trial court's exclusion of the data from the device based upon the Hands' failure to request an inspection of the device during discovery is equally unpersuasive in light of the Supreme Court of Georgia's decision in *Ballard v. Meyers*,[8] where it reversed the trial court's exclusion of a document impeaching the plaintiff's testimony because the defendant failed to list it in the pretrial order.[9] In doing so, our Supreme Court reasoned that "[w]hile an attorney in a civil action should disclose the names of those who will or may be relied upon affirmatively to prove the client's case, there is no comparable rationale for requiring the disclosure of documents which may be used to attack the credibility of the other side's witnesses."[10] The *Ballard* Court also noted that the imposition of such a restrictive rule could lead to situations in which "[a] party's witnesses could lie on the stand and then that party [could] object to the introduction of any impeaching documents which

---

[8] *See supra* note 5.

[9] *Ballard*, 275 Ga. at 819.

[10] *Id.* at 820.

10

were not expressly listed in the pretrial order."[11] And refusing to countenance such a result, the Court held that "[i]n a trial, the credibility of the witnesses is a matter which should be resolved by the jurors who have heard all of the relevant evidence, and not by the text of the pretrial order."[12]

Although decided well before the effective date of Georgia's new Evidence Code,[13] the principles espoused in *Ballard* are similarly posited by the federal case law interpreting Federal Rule of Evidence 607, which is identical to OCGA § 24-6-607.[14] Specifically, Rule 607 concerns the doctrine of impeachment by contradiction and permits the admission of extrinsic evidence to impeach specific errors or

---

[11] *Id.* at 821.

[12] *Id.* at 822; *see* OCGA § 24-6-620 ("The credibility of a witness shall be a matter to be determined by the trier of fact, and if the case is being heard by a jury, the court shall give the jury proper instructions as to the credibility of a witness.").

[13] *See supra* note 4.

[14] *See* Fed. R. Evid. 607 ("The credibility of a witness may be attacked by any party, including the party calling the witness"). Given the similarity between Georgia's new evidence code and the Federal Rules of Evidence "it is proper that we give consideration and great weight to constructions placed on the Federal Rules by the federal courts." *Jones v. State*, 326 Ga. App. 658, 660 (1) (757 SE2d 261) (2014) (punctuation omitted).

falsehoods in a witness's direct testimony, "subject to Rule 403."[15] Indeed, the federal courts have described impeachment by contradiction as "a means of policing the defendant's obligation to speak the truth in response to proper questions[.]"[16]

Employing the logic and reasoning from *Ballard*, as well as that delineated in the federal case law pertaining to Rule 607, we find that the Hands' failure to request data or documents from the Targis device during discovery—while tactically questionable—does not justify the exclusion of such relevant and impeaching evidence once it was discovered. Moreover, this information, which was never in the possession of the Hands' counsel, ostensibly documented treatments performed by Dr. Gonzalez and, therefore, were arguably within his own ability to recall. Consequently, the attempted introduction of this evidence by the Hands can hardly

---

[15] *United States v. Castillo*, 181 F3d 1129, 1133 (9th Cir. 1999); *accord United States v. Gilmore*, 553 F3d 266, 271 (II) (3d Cir. 2009); *United States v. Benedetto*, 571 F2d 1246, 1250 n.7 (2d Cir. 1978).

[16] *Morgan v. Covington Township*, 648 F3d 172, 179 (III) (C) (3rd Cir. 2011) (punctuation omitted); *see* Ronald L. Carlson & Michael Scott Carlson, Carlson On Evidence 255 (3d. ed. 2015) (noting that impeachment by contradiction permits courts to admit extrinsic evidence that specific testimony is false because other evidence contradicts it).

be characterized as "trial by ambush."[17] Given these circumstances and the fact that our law favors admission of relevant evidence even of slight probative value,[18] the trial court's ruling in this case constitutes an abuse of discretion as it "authorizes the exclusion of relevant impeaching evidence and allows the credibility of a crucial witness to go unchallenged."[19] Accordingly, we reverse the trial court's judgment and remand this case for a new trial. In doing so, we "deplore the significant burden a . . . retrial will impose, not only on the parties, but on the community as well[.]"[20]

[17] *See Ballard*, 275 Ga. at 822 (noting that because the controlling presumption is that all witnesses speak the truth, defense counsel was reasonably justified in assuming that he would not need to introduce impeaching document, and thus, his failure to list the document in the pretrial order was not an intentional act of ambush).

[18] *See Bennett*, 322 Ga. App. at 728 (1) (noting that "evidence having a tendency to establish facts in issue is relevant and admissible, and no matter how slight the probative value, our law favors admission of relevant evidence." (punctuation omitted)).

[19] *Ballard*, 275 Ga. at 822; *see Bolah*, 318 Ga. App. at 406-07 (holding that evidence that plaintiff received compensation for an earlier injury, which ordinarily would have been irrelevant and prejudicial, was admissible to impeach plaintiff's testimony that his earlier injury had not impaired him); *cf. Bennett*, 322 Ga. App. at 731 (1) (holding that the "exclusion of *probative* trial evidence is not an appropriate remedy for curing an alleged discovery omission." (punctuation omitted)).

[20] *Harper v. Barge Air Conditioning, Inc.*, 313 Ga. App. 474, 479 (1) (722 SE2d 84) (2011) (punctuation omitted); *see Guoth v. Hamilton*, 273 Ga. App. 435, 441 (1) (615 SE2d 239) (2005).

Nevertheless, we remain steadfast in "our commitment as a Court to safeguarding the sacrosanct and cherished right to a fair and impartial jury trial,"[21] and we will not hesitate to remand a case back to the trial court when this has not occurred.[22]

2. The Hands also contend that the trial court erred in failing to instruct the jury on the law pertaining to spoliation of evidence. Because this issue will likely reoccur, we address this enumeration and hold that the trial court did not err.

It is axiomatic that a jury charge must be "adjusted to the evidence, apt, and a correct statement of the applicable law."[23] And a refusal to give a requested jury charge is not error unless "the request is entirely correct and accurate; is adjusted to the pleadings, law, and evidence; and is not otherwise covered in the general

---

[21] *Harper*, 313 Ga. App. at 479 (1).

[22] *See id.*; *see also* GA. CONST. ART. I, SEC. I, PARA. XI (A) (providing that the right to a jury trial "shall remain inviolate"); *see generally* Morris S. Arnold, *A Historical Inquiry into the Right to Trial by Jury in Complex Civil Litigation, in* The Bill of Rights: Original Meaning and Current Understanding 399, 400 (Eugene W. Hickok, Jr. ed., 1993) ("That special affection for the jury ought to be viewed as relevant not just to the fact that jury trial was 'preserved' in the Constitution; it is relevant as well to interpreting the scope of the actual provision, for it gives the right granted an aura and the Constitution a meaning they would not otherwise have if the institution of jury trial had been regarded more or less indifferently.").

[23] *Wood v. B & S Enters., Inc.*, 314 Ga. App. 128, 130 (1) (723 SE2d 443) (2012) (punctuation omitted).

14

charge."[24] Furthermore, the review of allegedly erroneous jury instructions is a legal question, and we therefore "owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review."[25] Bearing these guiding principles in mind, we will now address the Hands' specific claim.

The Supreme Court of Georgia has held that "spoliation refers to the destruction or failure to preserve evidence that is necessary to *contemplated or pending litigation.*"[26] And if a trial court finds that a party has engaged in spoliation, it may instruct the jury regarding OCGA § 24-14-22,[27] which provides:

> If a party has evidence in such party's power and within such party's reach by which he or she may repel a claim or charge against him or her but omits to produce it or if such party has more certain and satisfactory evidence in his or her power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against such party is well founded; but this presumption may be rebutted.

---

[24] *Preston v. Sabetazm*, 269 Ga. App. 451, 454 (2) (604 SE2d 224) (2004).

[25] *Wood*, 314 Ga. App. at 130 (1) (punctuation omitted).

[26] *Silman v. Assocs. Bellemeade*, 286 Ga. 27, 28 (685 SE2d 277) (2009) (punctuation omitted); *accord Baxley v. Hakiel Indus., Inc.*, 282 Ga. 312, 314 (647 SE2d 29) (2007).

[27] This code section is nearly identical to former OCGA § 24-4-22. *See* Ga. Laws 2011, Act 52, § 2.

15

However, notice of potential *liability* is "not the same as notice of potential *litigation.*"[28] Rather, to meet the standard for proving spoliation, the injured party must show that "the alleged tortfeasor was put on notice that the party was contemplating litigation."[29] Indeed, the simple fact that someone is injured, without more, is "not notice that the injured party is contemplating litigation sufficient to automatically trigger the rules of spoliation."[30] Furthermore, the trial court has wide discretion in resolving spoliation issues, and "we will not disturb its ruling absent abuse."[31]

In this matter, the Hands requested that the trial court instruct the jury regarding OCGA § 24-14-22 after learning during trial that the Targis device in the courtroom was not the actual device that Dr. Gonzalez used to treat Hand. The trial court denied the request, and the Hands now claim that this denial constituted error. As noted previously, we disagree.

---

[28] *Craig v. Bailey Bros. Realty, Inc.*, 304 Ga. App. 794, 796 (1) (697 SE2d 888) (2010) (punctuation omitted); *accord Silman*, 286 Ga. at 28.

[29] *Craig*, 304 Ga. App. at 796 (1).

[30] *Id.* at 796-97 (1) (punctuation omitted).

[31] *Paggett v. Kroger Co.*, 311 Ga. App. 690, 692 (2) (716 SE2d 792) (2011).

16

Urologix replaced the Targis device in question nearly three months after Dr. Gonzalez used it to treat Hand. And putting aside whether Dr. Gonzalez was being truthful when he testified to having no recollection of Urologix retrieving device, there is no evidence that Dr. Gonzalez had notice that the Hands were contemplating litigation when Urologix replaced the device. Accordingly, the trial court did not err in ruling that instructing the jury pursuant to OCGA § 24-14-22 was unwarranted.[32]

3. The Hands also contend that the trial court erred in prohibiting cross-examination of Dr. Gonzalez regarding the past suspension of his medical license. Because this issue may also reoccur, we will address this argument as well, and hold that the trial court did not err in this respect either.

Prior to trial, the defendants filed a motion in limine, requesting the exclusion of any evidence regarding the temporary suspension of Dr. Gonzalez's medical license, which occurred years before he treated Hand. Following a pretrial hearing on

---

[32] *See Hendley v. Evans*, 319 Ga. App. 310, 317-18 (2) (b) (i) (734 SE2d 548) (2012) (holding that instruction regarding former OCGA § 24-4-22 is applicable only in cases when it is shown that a party has withheld evidence within party's control and an instruction on that principle should be given only in "exceptional cases."); *cf. Silman*, 286 Ga. at 27-28 (holding that defendant's removal and demolition of old deck (following its collapse), without more, was insufficient to show spoliation); *Craig*, 304 Ga. App. at 797 (1) (holding that defendant's discarding of protruding landscape timber spikes, seven months before plaintiffs filed suit alleging injury caused by spikes, did not constitute spoliation).

the matter, the Hands' counsel indicated that he did not intend to delve into this issue, and the trial court granted the defendants' motion. Thereafter, during direct examination, defense counsel asked Dr. Gonzalez how long he had been a urologist, and he responded, "1989 to the present." Subsequently, the Hands' counsel sought a bench conference and argued that Dr. Gonzalez's above-referenced testimony "opened the door" to the admission of evidence regarding the suspension of his license. The trial court disagreed and denied the Hands' request.

On appeal, the Hands reassert that Dr. Gonzalez's testimony—that he had been a urologist from 1989 to the present—opened the door for evidence regarding the suspension of his license. We disagree. As previously noted, "[q]uestions of relevancy are generally matters within the trial court's discretion[.]"[33] Nevertheless, it is not error to exclude evidence that "is not related to an issue at trial."[34] And evidence that is "both irrelevant and prejudicial is inadmissible."[35] Here, given that the suspension and reinstatement of Dr. Gonzalez's license occurred years before his

---

[33] *Wheeler v. Stewart*, 234 Ga. App. 714, 715 (507 SE2d 540) (1998) (punctuation omitted); *see also Bennett*, 322 Ga. App. at 728 (1).

[34] *Wheeler*, 234 Ga. App. at 715 (punctuation omitted).

[35] *Id.* (punctuation omitted).

treatment of Hand, the admission of such evidence was irrelevant to whether the doctor breached the standard of medical care in this particular case and would have been unduly prejudicial.[36] Moreover, even if we agreed with the Hands that Dr. Gonzalez's testimony regarding how long he had been a urologist could somehow be construed as implying that his practice had never been interrupted for any reason and, therefore, was untruthful, "a witness may not be impeached based upon a discrepancy relating to a wholly immaterial matter."[37] And in stark contrast to the evidence discussed in Division 1, *supra*, evidence of Dr. Gonzalez's past license suspension is immaterial. Accordingly, the trial court did not abuse its discretion in prohibiting cross-examination of Dr. Gonzalez regarding the past suspension of his medical license.[38]

---

[36] *See id.* (holding that evidence of doctor's drug use and subsequent rehabilitation, which occurred after his treatment of plaintiff, were not relevant to his treatment of plaintiff and would have been unduly prejudicial).

[37] *Smith v. State*, 283 Ga. 237, 241 (5) (657 SE2d 523) (2008) (punctuation omitted); *cf. Ballard*, 275 Ga. at 821 (holding that trial court's ruling that excluded relevant impeaching evidence was not immaterial as it allowed the credibility of a crucial witness to go unchallenged); *Barngrover*, 289 Ga. App. at 412 (1) (allowing plaintiff a limited cross-examination into whether physician's medical license was renewed after physician's specific testimony that he had allowed it to expire).

[38] *See Wheeler*, 234 Ga. App. at 715.

19

4. Because we have determined that a new trial is necessary, we need not address the Hands' remaining enumeration of error regarding whether the evidence supported the jury's verdict.

For all of the foregoing reasons, we reverse the trial court's judgment in favor of the defendants and remand the case for a new trial.

*Judgment reversed and case remanded. Doyle, P. J., and Miller, J., concur.*

ON MOTION FOR RECONSIDERATION

On motion for reconsideration, the defendants request that we revisit our ruling that the trial court erred in excluding the data from the Targis device (discovered during trial) that was admissible to impeach Dr. Gonzalez's testimony that he did not use the device after learning of Hand's injury. Specifically, defendants argue that the trial court did not err in excluding this evidence because the data was never actually printed from the device during trial, and thus, the Hands never made a formal proffer of same. We disagree.

Defendants are correct that the record is somewhat confusing as to whether the data on the Targis device—showing that Dr. Gonzalez used it six more times after learning of Hand's injury—was ever printed during trial. Indeed, this confusion seemingly even extends to defendants' own appellate brief, in which their initial reference to the issue notes that "[a]ppellants turned the machine on and printed

subsequent data from it at trial . . ." But regardless of the *form* of the data, the fact remains that it constitutes evidence that contradicts both Dr. Gonzalez's deposition and trial testimony.[39] Moreover, defendants' argument that exclusion of the evidence was proper because the Hands never made a formal proffer is unpersuasive. OCGA § 24-1-103 (a) (2) provides that "[e]rror shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by an offer of proof or was apparent from the context within which questions were asked." Here, the record is replete with discussions between both parties and the trial court regarding the fact that the data indicates that Dr. Gonzalez used the Targis device after learning of Hand's injury, despite his testimony to the contrary.[40] In fact, the trial court succinctly and accurately summarized the Hands' argument for the admissibility of the data just before ultimately ruling to exclude the evidence. Thus, the trial court was fully aware of what the data generally

---

[39] *See Castillo*, 181 F3d at 1133; *see also Ballard*, 275 Ga. at 822; *Bolah*, 318 Ga. App. at 406-07.

[40] *See* Milich, Georgia Rules of Evidence, § 3.5, p. 66 (2d ed. 2014) ("[A]ll that is required [of an offer of proof] is presentation of the pertinent facts on the record, a task that can be accomplished by counsel simply stating the facts on the record.").

entailed and why the Hands believed it was important to their case. Nevertheless, the court chose to exclude this relevant impeaching evidence and allow the credibility of Dr. Gonzalez to go unchallenged.[41] In doing so, the trial court committed reversible error. Accordingly, defendants' motion for reconsideration is denied.

---

[41] *See Ballard*, 275 Ga. at 822; *Bolah*, 318 Ga. App. at 406-07.