A05A0170. MURPHY et al. v. BERGER et al.

(616 SE2d 132)

JOHNSON, Presiding Judge.

This case began as a traditional medical malpractice action. Dr. Jay Berger and Jay S. Berger, M.D., P.C. (collectively "Berger") performed a phacoemulsification with implantation of a posterior chamber intraocular lens ("cataract surgery") on the right eye of Thomas Murphy. Thomas and Andrea Murphy allege that Berger negligently injured Thomas Murphy while administering a retrobulbar anesthetic injection during the procedure. The Murphys later amended their complaint to include an allegation that Berger violated OCGA § 31-9-6.1, a statute governing informed consent in specific types of medical procedures.

The Murphys sought partial summary judgment on their informed consent allegation, and Berger sought to dismiss the informed consent allegation on the ground that OCGA § 31-9-6.1 is inapplicable to the facts of the case. The trial court found that the requirements of OCGA § 31-9-6.1 do not apply to the anesthetic injection causing the injury in this case, and dismissed this allegation of the complaint. While we do not reach the merits of the trial court's judgment regarding the anesthetic injection, we affirm because the requirements of OCGA § 31-9-6.1 do not apply to Thomas Murphy's cataract surgery.

On appeal of a grant of summary judgment, we determine whether the trial court erred in concluding that the moving party demonstrated that no genuine issue of material fact remained and that he was entitled to judgment as a matter of law.[1] The moving party may carry this burden either by (1) presenting evidence negating an essential element of the nonmoving party's claim; or (2) demonstrating an absence of evidence to support an essential element of the nonmoving party's claim.[2] If the moving party discharges this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleadings, but rather must point to specific evidence giving rise to a triable issue.[3]

1. The Murphys contend the trial court erred in determining that OCGA § 31-9-6.1 is inapplicable in the present case. The main issue to be determined is whether the Murphys have a valid claim, based upon Berger's failure to obtain an informed consent to the procedure

---

[1] OCGA § 9-11-56 (c).

[2] *Parks v. Multimedia Technologies*, 239 Ga. App. 282, 286 (2) (520 SE2d 517) (1999).

[3] OCGA § 9-11-56 (e).

utilized, under either the common law or statutory law. We find that they do not. However, their claim for professional negligence remains intact.

(a) Common law informed consent.

As the trial court noted, it was unclear whether the Murphys contended they had a common law cause of action based upon Berger's failure to obtain informed consent to the procedure utilized. However, even if they did assert an action based upon Berger's failure to obtain an informed consent to the procedure utilized, the trial court properly held that the common law as it existed at the time of Thomas Murphy's surgery did not require informed consent. Under the common law as it existed at the time of Thomas Murphy's surgery, all that was required was that Thomas Murphy be informed in general terms of the intended medical treatment; it was not required that he be informed of the material risks or the practical alternatives.[4] In the present case, it is undisputed that Thomas Murphy was informed in general terms of the intended medical treatment.

Although this Court later recognized the common law doctrine of informed consent in *Ketchup v. Howard*,[5] that opinion was entered on November 29, 2000, almost eleven months after Thomas Murphy's surgery, and expressly provided that its holding was "purely prospective" for legal reasons explained thoroughly in that decision.[6] The trial court thus correctly ruled that the Murphys do not have a claim based upon Berger's failure to obtain informed consent, and the Murphys do not appeal any decision of the trial court premised upon a lack of common law informed consent.

(b) Statutory informed consent.

The Murphys' claims on appeal strictly deal with the trial court's decision regarding the applicability of OCGA § 31-9-6.1. We agree with the trial court that this statute is inapplicable in the present case.

OCGA § 31-9-6.1 sets forth specified categories of information that must be disclosed by medical care providers to their patients before they undergo certain specified surgical or diagnostic procedures. The statute explicitly applies only to

> any person who undergoes any surgical procedure under general anesthesia, spinal anesthesia, or major regional anesthesia or any person who undergoes an amniocentesis

---

[4] See *Albany Urology Clinic v. Cleveland*, 272 Ga. 296, 298-299 (1) (528 SE2d 777) (2000).
[5] 247 Ga. App. 54 (543 SE2d 371) (2002).
[6] Id. at 64 (4).

diagnostic procedure or a diagnostic procedure which involves the intravenous or intraductal injection of a contrast material.[7]

The person must only consent to "such procedure" and be informed of numerous factors, all of which pertain to the surgical procedure.[8] Further, to bring a cause of action under this section, the injury must have been proximately caused by the surgical or diagnostic procedure.[9] It is important to note that the surgical or diagnostic procedure performed in this case is the cataract surgery, not the anesthetic injection.

Because OCGA § 31-9-6.1 is in derogation of the common law rule *as it existed at the time of the incident in this case*, it must be strictly construed and cannot be extended beyond its plain and explicit terms.[10] "Thus, in situations not covered by the statute's language, the common law rule must still govern, as courts are without authority to impose disclosure requirements upon physicians in addition to those requirements already set forth by the General Assembly."[11] Applying this standard, it follows that, regardless of Berger's alleged negligence at the time he rendered medical services to Thomas Murphy, the trial court correctly concluded that Berger was not under an affirmative obligation, either under statute or common law, to disclose any medical risks associated with the retrobulbar anesthetic injection because the cataract surgery was not performed under any of the three types of anesthesia specified by the statute.

The Murphys argue that OCGA § 31-9-6.1 applies because Thomas Murphy was under general anesthesia and under major regional anesthesia during his cataract surgery. We disagree. Despite some of the language and/or characterizations used by witnesses in this case, it is clear that the cataract surgery was not performed under general anesthesia, spinal anesthesia, or major regional anesthesia as required for application of the statute.

The Georgia Composite State Board of Medical Examiners, pursuant to authority delegated in OCGA § 31-9-6.1 (g), promulgated rules and regulations for the purpose of ensuring physician compliance with OCGA § 31-9-6.1. These rules are contained in the Georgia Administrative Code.[12] In these rules, "general anesthesia" means "a state of unconsciousness and insensitivity to pain affecting the entire

---

[7] OCGA § 31-9-6.1 (a).

[8] OCGA § 31-9-6.1 (a) (1)-(6).

[9] OCGA § 31-9-6.1 (d) (1).

[10] See *Albany Urology Clinic*, supra at 299.

[11] Id.

[12] See Ga. Comp. R. & Regs. r. 360-14-.01 et seq.

body which is produced by the administration of an intramuscular, intravenous or inhalant anesthetic."[13] While Thomas Murphy may have received heavy sedation, there is no dispute that he was not under general anesthesia as defined by the Code. "Spinal anesthesia" is defined as "a state of insensitivity to pain which is produced by the temporary interruption of the sensory nerve conductivity of a major region of the body through the injection of an anesthetic into the subarachnoid space."[14] There is no dispute that Thomas Murphy did not receive any anesthetic injection into the subarachnoid space. "Major regional anesthesia" means "a state of insensitivity to pain affecting a major region of the body which is produced by the temporary interruption of the sensory nerve conductivity of such region through the administration of a spinal, epidural, intravenous regional, or brachial plexus anesthetic."[15] By its own definition, major regional anesthesia must affect a "major region" of the body. The Georgia Administrative Code defines "major region" as an "entire arm, leg, torso, or any combination thereof."[16] An eye is not included in this definition.

Because Thomas Murphy's cataract surgery was not performed under general anesthesia, spinal anesthesia, or major regional anesthesia, OCGA § 31-9-6.1 does not apply and statutory informed consent was not required as to any portion of the surgery. Although this was not the basis of the trial court's judgment, a judgment right for any reason should be affirmed.[17]

2. Based on our holding in Division 1, the remainder of the Murphys' claims, which deal with the nature of their informed consent allegation and purported admissions regarding the timing of Thomas Murphy's informed consent, are hereby rendered moot.

*Judgment affirmed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED JUNE 21, 2005.

*Benjamin S. Williams, Gary L. Wimbish*, for appellants.
*Huff, Powell & Bailey, Jeffrey D. Braintwain, Paul E. Weathington, Simuel F. Doster, Jr.*, for appellees.

---

[13] Ga. Comp. R. & Regs. r. 360-14-.02 (4).
[14] Ga. Comp. R. & Regs. r. 360-14-.02 (14).
[15] Ga. Comp. R. & Regs. r. 360-14-.02 (8).
[16] Ga. Comp. R. & Regs. r. 360-14-.02 (7).
[17] See *City of Gainesville v. Dodd*, 275 Ga. 834, 835-836 (573 SE2d 369) (2002); *Taylor v. Kennestone Hosp.*, 266 Ga. App. 14, 21 (4) (596 SE2d 179) (2004).