## A10A0697. THOMPSON v. PRINCELL.

(696 SE2d 91)

MILLER, Chief Judge.

Cynthia A. Thompson sued Dr. Jeffrey R. Princell for dental malpractice, alleging that Princell was negligent in recommending surgery to extract Tooth No. 32, a wisdom tooth, and failing to disclose the magnitude of the risks and practical alternatives to the surgery pursuant to OCGA § 31-9-6.1, a statute governing informed consent in specific types of medical procedures. A jury found in favor of Princell. Thompson appeals the jury's verdict and resulting judgment, contending that the trial court erred in refusing to charge the jury on informed consent, and charging the jury on foreseeability. Finding that the requirements of OCGA § 31-9-6.1 are inapplicable to the extraction of Tooth No. 32, and discerning no error in the foreseeability charge, we affirm.

"In order for [a trial court's refusal to give a party's written requested charge] to be error, the request[ ] must be . . . adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge." (Citations and punctuation omitted.) *Gates v. Navy*, 274 Ga. App. 180, 182 (3) (617 SE2d 163) (2005). It is not otherwise with respect to an allegedly erroneous jury instruction. *Kroger Co. v. Strickland*, 248 Ga. App. 613, 617 (3) (548 SE2d 375) (2001). "In reviewing an allegedly erroneous jury instruction, we apply the 'plain legal error' standard of review." (Citation, punctuation and footnote omitted.) *Horton v. Hendrix*, 291 Ga. App. 416, 418 (1) (662 SE2d 227) (2008).

Viewed in the light most favorable to the jury's verdict (*Tice v. Cole*, 246 Ga. App. 135 (537 SE2d 713) (2000)), the record shows that in January 2001, Thompson visited Princell's office for a procedure to remove the tip of Tooth No. 13, pursuant to a referral from her dentist and also complained of pain in her lower right jaw. Princell had a Panorex x-ray taken of her mouth and observed that Tooth No. 32 was below the bone, "fully impacted" and possibly striking against Tooth No. 31, her remaining "chewing tooth." Concerned that Tooth No. 32 would lead to the loss of Tooth No. 31, Princell recommended extraction of Tooth No. 32, yet advised Thompson and her mother that because the root of such tooth extended below her mandibular nerve, a significant risk existed that removal of Tooth No. 32 could result in injury to the lingual nerve, the nerve providing sensation to her tongue, including numbness. Princell also advised Thompson that there were no practical alternatives to surgery. Thompson completed and signed a standardized informed consent form utilized by Princell's office for dental extractions of this nature, which included information about the risks associated with her surgery. Thompson agreed to allow Princell to extract Tooth Nos. 32

and 13, which he performed that same day. Thompson received a local anesthetic to numb her mouth, an inhalant anesthesia and intravenous anesthesia ("IV anesthesia"). During the 25-minute procedure, however, Princell damaged Thompson's inferior alveolar nerve, the nerve giving sensation to one's lip and chin. Thereafter, Thompson experienced significant pain in her mouth, radiating to her neck. She consulted with Dr. John M. Gregg, an oral and maxillofacial surgeon, who diagnosed her with complex regional pain syndrome, type II, also known as neuropathic pain syndrome, based on altered or deficient sensory response in her right tongue, lip and chin. While he opined that Thompson sustained an injury to her inferior alveolar nerve and lingual nerve as a result of her oral surgery and that such injury caused her neuropathic pain syndrome, Gregg admitted that the causes and incident rate of such pain syndrome were not well known. Dr. William Kopp, a retired oral and maxillofacial surgeon, testified at trial that he was unfamiliar with neuropathic pain syndrome. Another such surgeon, Dr. Glenn Maron, as well as Princell, testified they were unaware of any incident in which neuropathic pain syndrome resulted from the extraction of a wisdom tooth.

At the conclusion of the trial, the trial court declined to give Thompson's proposed charge on OCGA § 31-9-6.1.

Thompson contends that the trial court committed harmful error in (i) refusing to give her proposed charge on OCGA § 31-9-6.1 and (ii) charging on foreseeability. We disagree.

(a) *OCGA § 31-9-6.1.* Thompson argues that because she received general anesthesia and major regional anesthesia during the extraction of Tooth No. 32, the trial court erred in refusing to give her charge on OCGA § 31-9-6.1. We disagree.

OCGA § 31-9-6.1 (a) provides, in relevant part:

Except as otherwise provided in this Code section, *any person who undergoes any surgical procedure under general anesthesia, spinal anesthesia, or major regional anesthesia* . . . must consent to such procedure and shall be informed in general terms of the following:

(1) A diagnosis of the patient's condition requiring such proposed surgical . . . procedure;

(2) The nature and purpose of such proposed surgical . . . procedure;

(3) *The material risks generally recognized and accepted by reasonably prudent physicians* of infection, . . . loss of function of any limb or organ, paralysis or partial paraly-

sis . . . *involved in such proposed surgical . . . procedure* which, if disclosed to a reasonably prudent person in the patient's position, could reasonably be expected to cause such prudent person to decline such proposed surgical . . . procedure on the basis of the material risk of injury that could result from such proposed surgical . . . procedure;

(4) The likelihood of success of such proposed surgical . . . procedure;

(5) *The practical alternatives to such proposed surgical . . . procedure* which are generally recognized and accepted by reasonably prudent physicians; and

(6) The prognosis of the patient's condition if such proposed surgical . . . procedure is rejected.

(Emphasis supplied.) Thus, the onus was on Thompson to produce evidence that she received one of the required forms of anesthesia as these terms are defined by the rules and regulations of the Georgia Composite Medical Board. See OCGA § 31-9-6.1 (g). These rules, which are contained in the Georgia Administrative Code, define "[g]eneral anesthesia" as "a state of unconsciousness and insensitivity to pain affecting the entire body which is produced by the administration of an intramuscular, intravenous or inhalant anesthetic." Ga. Comp. R. & Regs. r. 360-14-.02 (4). Further, "[m]ajor regional anesthesia" is defined as "a state of insensitivity to pain affecting a major region of the body which is produced by the temporary interruption of the sensory nerve conductivity of such a region through the administration of [an] . . . intravenous regional . . . anesthetic." Ga. Comp. R. & Regs. r. 360-14-.02 (8).

During the charge conference, Princell objected to the trial court's decision to give Thompson's requested charge on OCGA § 31-9-6.1, arguing that there was no evidence of general, spinal, or major regional anesthesia to authorize it. Thompson argued the applicability of the statute based on evidence that (i) she received "major regional anesthesia" because the IV anesthesia affected the entire region of her face and nerves, and (ii) since she received "general anesthesia," she was "knocked out" and had no pain in her facial region. After taking the matter under advisement, the trial court declined to give Thompson's proposed charge on the informed consent statute, stating that she was "not sure what 'major' means[,]" to which Thompson excepted.

Thompson argues in her supplemental brief that the definition of general anesthesia set forth in OCGA § 43-11-1 (7), applicable to dentists, dental hygienists, and dental assistants, governs the appli-

cability of the informed consent statute.[1] Under this Code section, general anesthesia is defined as:

> an induced state of depressed consciousness, or an induced state of unconsciousness, accompanied by partial or complete loss of protective reflexes, including the inability to continually and independently maintain an airway and respond purposefully to physical stimulation or verbal command, and produced by a pharmacological or nonpharmacological method or combination thereof. For purposes of this chapter, "general anesthesia" includes deep sedation.

Id. Although Thompson now argues that the definition of general anesthesia, as above, supports a charge on OCGA § 31-9-6.1 based on evidence that the IV anesthesia placed her under a deep sedation, it is undisputed that she failed to request a written charge on OCGA § 43-11-1 (7) and never argued the applicability of this statute during the charge conference. Nor did Thompson properly enumerate such issue as error. See *Imperial Foods Supply v. Purvis*, 260 Ga. App. 614, 617 (4) (580 SE2d 342) (2003) ("[a]rguments raised in the appellate brief are not made issues on appeal unless they are properly enumerated as error") (punctuation and footnote omitted). Thus, her current reliance on OCGA § 43-11-1 (7) is waived because it was not raised at the trial level. *Padilla v. Melendez*, 228 Ga. App. 460, 461 (1) (491 SE2d 905) (1997) (appellate court will not consider [an issue] raised for the first time on appeal, "because the trial court has not had [the] opportunity to consider [it]") (citation and punctuation omitted).

Notwithstanding evidence that Thompson was under deep sedation or was basically asleep during surgery, the record is devoid of any evidence that Thompson was in a state of unconsciousness with an absence of pain sensation over her *entire* body within the meaning of OCGA § 31-9-6.1 (a). See Ga. Comp. R. & Regs. r. 360-14-.02 (4). Further, since neither the mouth nor the jaw is considered a major region, OCGA § 31-9-6.1 (a) is also inapplicable on this account. Ga. Comp. R. & Regs. r. 360-14-.02 (7) ("major region" is defined as an "entire arm, leg, torso, or any combination thereof"). See also *Murphy v. Berger*, 273 Ga. App. 798, 801 (1) (b) (616 SE2d 132) (2005) (because an eye is not included in the definition of a "major

---

[1] During oral argument, Thompson's counsel raised OCGA § 43-11-1's definition of general anesthesia for the first time on appeal to support her argument that the trial court erred in refusing to give her charge on OCGA § 31-9-6.1. This Court permitted the parties to file a supplemental brief on this issue.

region," cataract surgery was not performed under major regional anesthesia and "statutory informed consent was not required as to any portion of the surgery"). Accordingly, the evidence did not authorize a charge on OCGA § 31-9-6.1. *Gates*, supra, 274 Ga. App. at 182 (3).

(b) *Foreseeability*. Thompson contends that the trial court erred in giving Princell's foreseeability charge in lieu of the pattern charge on foreseeability which the trial court indicated it would give. Specifically, Thompson argues that a nerve injury resulting from the extraction of her wisdom tooth was foreseeable, and that negligence law requires only that she establish that "some" injury be foreseeable, not the particular consequences which resulted here, i.e., neuropathic pain syndrome. Given that Princell's foreseeability charge was a correct statement of the law and adjusted to the facts of the case, we disagree.

During the charge conference, the trial court declined to give Thompson's Request to Charge No. 16 on foreseeability and, without objection, indicated that it would give the pattern charge on foreseeability instead.[2] Upon reviewing Princell's proposed jury charges in the charge conference, the trial court reversed its decision to give the pattern charge on foreseeability over Thompson's objection and stated that it would give Princell's handwritten foreseeability charge. Thereafter, the trial court charged the jury as follows:

> A person is not bound to foresee and guard against incidents which are not reasonably to be expected or which would not occur except under exceptional circumstances. If you find from all of the evidence that the incident described in this case came about as a result of exceptional circumstances, which could not be reasonably foreseen or expected by the defendant, then the defendant cannot be held responsible for the occurrence.

Following the conclusion of the jury charge, Thompson objected to the foregoing charge without specifying the grounds.

---

[2] The pattern charge on foreseeability states:
> A defendant may be held liable for an injury when that person commits a negligent act that puts other forces in motion or operation resulting in the injury when such other forces are the natural and probable result of the act that the defendant committed and that reasonably should have been foreseen by the defendant. When the injuries could not reasonably have been foreseen as the natural, reasonable and probable result of the original negligent act, then there can be no recovery. If the chain reaction that resulted from the defendant's alleged negligence, if any, meets the above tests, then the plaintiff may recover.

Suggested Pattern Jury Instructions, Vol. I: Civil Cases, § 60.202.

To preserve appellate review of a charging error, "an objection must clearly direct the attention of the trial court to the claimed error and must be stated with sufficient particularity to leave no doubt as to the specific ground upon which the charge is challenged[.]" (Citation and footnote omitted.) *Thrash v. Rahn*, 249 Ga. App. 351, 353 (4) (547 SE2d 694) (2001). While Thompson excepted at the charge conference to the trial court's decision to give Princell's foreseeability charge because it was covered in the pattern charge, she failed to raise any objections to the foreseeability charge given by the trial court following the actual jury charge and before the jury's verdict. As such, the instant claim of error is waived. OCGA § 5-5-24 (a) ("[I]n all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he [or she] objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds for his objection"); *Sims v. GT Architecture Contractors Corp.*, 292 Ga. App. 94, 97 (2) (663 SE2d 797) (2008) (with respect to claim that trial court gave an erroneous jury instruction, "an objection made at a charge conference before the charge is given does not preserve a charging issue for appellate review"); compare *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 236 (2) (547 SE2d 637) (2001) (in order to preserve for appellate review an objection to a trial court's refusal to give a party's written requested charge, "all that is needed after the charge is a perfunctory objection identifying the omitted requested charge").

Even were it otherwise, we find no substantial error. See OCGA § 5-5-24 (c) ("Notwithstanding any other provision of this Code section, the appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether [an] objection was made[.]"). "It is axiomatic that a jury charge need not be given in the exact language requested if the charge as given clearly covers the circumstances of the case." *Horton*, supra, 291 Ga. App. at 419-420 (1) (b). This is such a case.

The entirety of Thompson's damages claim was neuropathic pain syndrome from which she suffered after the extraction of Tooth No. 32. Since there was conflicting evidence as to whether it was reasonably foreseeable or expected that neuropathic pain syndrome could result from the extraction of a wisdom tooth, Princell's foreseeability charge addressed a disputed issue in the case. There also was evidence that the causes and incident rate of such pain syndrome were relatively unknown.

[O]ne is bound to anticipate and provide against what usually happens and what is likely to happen; *but it would impose too heavy a responsibility* to hold him bound in like

manner to guard against what is unusual and unlikely to happen, or what is only remotely and slightly probable.

(Punctuation and footnote omitted; emphasis supplied.) *Sotomayor v. TAMA I, LLC*, 274 Ga. App. 323, 327 (2) (617 SE2d 606) (2005). In view of this evidence, the trial court's foreseeability charge was a correct statement of law, which was adjusted to the facts of the case. We have previously approved such charge as a correct statement of the law. See *Jackson v. Rodriquez*, 173 Ga. App. 211, 215 (5) (325 SE2d 857) (1984).

Accordingly, the trial court did not err in refusing to charge on OCGA § 31-9-6.1 and giving the adjusted charge on foreseeability.

*Judgment affirmed. Phipps, P. J., and Johnson, J., concur.*

DECIDED MAY 28, 2010.

*Henry, Spiegel & Milling, Roberts C. Milling II, Curtis A. Thurston, Jr.*, for appellant.

*Coles Barton, Matthew S. Coles*, for appellee.