**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**November 21, 2012**

# In the Court of Appeals of Georgia

A12A1218. HENDLEY et al. v. EVANS et al.

MCFADDEN, Judge.

Joan and John Hendley sued Glenn Evans, M. D. and his employer, Valdosta Medical Clinic, P. C. (the defendants), for medical malpractice. The Hendleys contend that Joan Hendley suffered a vessel collapse during a medical procedure performed by Dr. Evans. They contend that Joan Hendley sustained brain damage and other physical injuries as a result of acts and omissions of Dr. Evans and of hospital personnel who were working under Dr. Evans's supervision at the time of the collapse. A jury returned a defense verdict, upon which the trial court entered judgment. The Hendleys appeal.

The Hendleys argue that the trial court erred in failing to give any of several jury charges they requested on the issue of Dr. Evans's potential vicarious liability

for the acts and omissions of hospital personnel. We agree that the trial court was required to charge on this theory of recovery, and accordingly we reverse.

We find no merit, however, in the Hendleys' arguments that the trial court erred in failing to give other requested charges on evidentiary presumptions and circumstantial evidence or in giving Dr. Evans's requested charge on accepted risk. Finally, in light of our disposition and given the impending change to Georgia's evidence rules, we do not address the Hendleys' claim that the court erred in excluding as hearsay certain witness testimony that they argued was subject to the res geste exception.

1. *Facts and proceedings below.*

The trial evidence showed that on November 9, 2005, a doctor in Dr. Evans's practice performed a diagnostic heart catheterization procedure on Mrs. Hendley at a hospital. During the catheterization procedure, that doctor decided that Mrs. Hendley also should undergo an angioplasty procedure to insert stents into some of her blood vessels.

Dr. Evans performed the angioplasty procedure. During that procedure, Mrs. Hendley's blood pressure dropped and one of her blood vessels collapsed. Dr. Evans then called a "Code Blue." Hospital personnel in the operating room performed CPR

2

on Mrs. Hendley and, after multiple attempts, intubated her. During the Code, however, Mrs. Hendley's oxygen saturation dropped to a dangerous level. The Hendleys presented evidence that she sustained some brain damage from lack of oxygen following the vascular collapse.

Mrs. Hendley remained intubated for several weeks after the Code due to complications, and after several unsuccessful attempts at extubation she underwent a tracheotomy. The doctor who performed the tracheotomy found damaged tissue and scarring in her esophagus. The Hendleys presented evidence that this scarring was a complication of the multiple intubation attempts and prolonged intubation. After continued complications and additional surgeries, Mrs. Hendley's voice box was removed and she is now permanently dependent on a tracheostomy.

2. *Jury charges.*

The Hendleys argue that the trial court erred in denying their requests for jury charges on the following issues: the borrowed servant doctrine*,* respondeat superior, agency, imputed negligence, evidentiary presumptions arising from a party's failure to produce evidence or witness testimony, and circumstantial evidence. They also argue that the trial court erred in giving the defendants' requested charge on accepted risk.

"A charge on a given subject is justified if there is even slight evidence from which a jury could infer a conclusion regarding that subject." (Citations and punctuation omitted.) *Gates v. Navy*, 274 Ga. App. 180, 183 (4) (617 SE2d 163) (2005). A trial court may deny a specific request to charge if any portion of the request is inapt or incorrect, because a request to charge must be "correct, legal, apt, even perfect, and precisely adjusted to some principle involved in the case." (Citation omitted.) *Lifestyle Family, L. P. v. Lawyers Title Ins. Corp.*, 256 Ga. App. 305, 311 (3) (568 SE2d 171) (2002). Nevertheless, "[a] trial court must instruct a jury on the law as to every controlling, material, substantial and vital issue in the case. The failure to charge on a properly asserted and legally cognizable theory of recovery, whether requested or not, or attention be called to it or not, is harmful as a matter of law." (Citations and punctuation omitted.) *Duffield v. Chui*, 314 Ga. App. 214, 214-215 (723 SE2d 506) (2012). Accord *Tempo Mgmt. v. Lewis*, 210 Ga. App. 390, 391 (1) (436 SE2d 98) (1993).

(a) *The trial court erred in failing to charge the jury on Dr. Evans's potential vicarious liability for the negligence of hospital personnel.*

Concerning the issue of Dr. Evans's vicarious liability, the Hendleys sought that the jury be charged on the borrowed servant doctrine or, alternatively, be given

4

the pattern charges on respondeat superior, agency and imputed negligence. The trial court, however, declined to give any of these requested charges, and its final charge did not instruct the jury on the issue of Dr. Evans's possible vicarious liability.

As detailed below, the trial court did not err in declining to give the specific charge that the Hendleys requested on the borrowed servant doctrine, because it was not a fully accurate statement of the law. The Hendleys, however, presented some evidence from which a jury could find Dr. Evans vicariously liable for the negligent acts and omissions of hospital personnel, and the trial court was required to instruct the jury on this theory of the Hendleys' case. The court's failure to give any instruction on vicarious liability was reversible error.

(i) A doctor may be found liable under the theory of respondeat superior for the negligent acts of his employees. See *Packer v. Gill*, 193 Ga. App. 388, 390 (4) (388 SE2d 338) (1989). "[T]he traditional definition of 'employee' . . . has for at least a century contained within its purview borrowed servants." *Summerlin v. Ga. Pines Community Svc. Bd.*, 286 Ga. 593, 595 (2) (690 SE2d 401) (2010). "Ordinarily, when one lends his servant to another for a particular employment, the servant will be dealt with as a servant of the person to whom he is lent, although he remains the general servant of the person who lent him." (Citations omitted.) *Merry Bros. Brick &c. v.*

5

*Jackson*, 120 Ga. App. 716, 719 (171 SE2d 924) (1969); see *Summerlin*, 286 Ga. at 594 (2) ("borrowed servants are employees of the borrowing employer") (citations omitted).

Accordingly, the borrowed servant doctrine "is applied in the context of the tort doctrine of respondeat superior." *Summerlin*, 286 Ga. at 596 (2); see *Staffing Resources v. Nash*, 218 Ga. App. 525 (1) (462 SE2d 401) (1995). It is a means of transferring the vicarious liability for an employee's negligence from a lending employer to a borrowing employer. See *Hoffman v. Wells*, 260 Ga. 588, 590 (2) (397 SE2d 696) (1990) (discussing borrowed servant doctrine as effecting a transfer of vicarious liability); *Ross v. Chatham County Hosp. Auth.*, 258 Ga. 234 (367 SE2d 793) (1988) (same).

> The requirements for the borrowed servant doctrine to apply
>
> are well settled in this state[.] In order for an employee to be a borrowed employee, the evidence must show that (1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control, and (3) the special master had the exclusive right to discharge the servant. *Six Flags Over Ga. v. Hill*, 247 Ga. 375, 377 (1) (276 SE2d 572) (1981).

6

(Punctuation omitted.) *Tim's Crane & Rigging v. Gibson*, 278 Ga. 796, 797 (604 SE2d 763) (2004). The three prongs of this test "focus on the occasion when the injury occurred rather than the work relationship in general." (Punctuation omitted.) *Stephens v. Oates*, 189 Ga. App. 6, 7 (1) (374 SE2d 821) (1988); see *Berry v. Davis Feed & Seed*, 237 Ga. App. 768, 770 (561 SE2d 812) (1999) (as to the third prong, "the temporary employer's exclusive power to discharge must relate only to the temporary assignment") (citation and punctuation omitted).

A number of Georgia cases have explored the parameters of this basis for imputing liability in the context of a hospital operating room. In *Miller v. Atkins*, 142 Ga. App. 618 (236 SE2d 838) (1977), and its progeny we explained that "where a hospital yields control of its employees to a surgeon in the operating room, and the surgeon exercises immediate personal supervision over those employees, then he becomes their master, *and their negligence during the course of the master-servant relationship will be imputable to him*." (Emphasis supplied.) Id. at 619. Accord *McClure v. Clayton County Hosp. Auth.*, 176 Ga. App. 414, 418 (3) (336 SE2d 268) (1985); *Swindell v. St. Joseph's Hosp.*, 161 Ga. App. 290, 291 (1) (291 SE2d 1) (1982). Our Supreme Court, in *Ross v. Chatham County Hosp. Auth.*, 258 Ga. 234 (367 SE2d 793) (1988), reaffirmed this principle regarding the transfer of vicarious

liability for the negligence of hospital employees from the hospital to an operating room doctor pursuant to the borrowed servant doctrine. Id. at 234-235 (1). The Court held in *Ross* that a hospital seeking to defend a medical malpractice claim based upon the negligent acts of its employees during a surgical procedure performed in a hospital operating room must show three things: (1) that the hospital yielded control of its employees who were assisting in the surgical procedure; (2) that the employees were under the immediate supervision of the surgeon; and (3) that the tasks performed by the employees involved professional skill and judgment. Id. at 235 (1).

The defendants contend that *Ross* stands for the proposition that the borrowed servant doctrine may only be used defensively by a party seeking to transfer vicarious liability to another party. They assert in their appellate brief that neither *Ross* nor the other Georgia cases addressing the borrowed servant doctrine in the hospital context "permit a medical malpractice plaintiff to assert the [b]orrowed [s]ervant [d]octrine as an affirmative theory of *recovery*." (Emphasis in original.) Essentially, the defendants argue that a plaintiff injured by the negligent acts of hospital personnel while they were working as borrowed servants of an operating room doctor has no affirmative cause of action against the doctor under respondeat superior, but instead must sue the hospital so that the hospital can assert the borrowed servant doctrine as

8

a defense. Only when the hospital is then removed from the case, under the defendants' theory, may the plaintiff proceed against the hospital personnel's temporary employer, the doctor.

We disagree with the defendants' depiction of the function of the borrowed servant doctrine. To say that a plaintiff has no affirmative cause of action against a negligent actor's employer is contrary to the doctrine of respondeat superior, under which employers may be vicariously liable for their employees' negligence. Outside of the operating room context, we have held that an employer could be vicariously liable on a plaintiff's claim based on the negligence of a borrowed servant. See *Coe v. Carroll & Carroll, Inc.*, 308 Ga. App. 777, 778-782 (1) (709 SE2d 324) (2011) (finding summary judgment not appropriate in personal injury action against allegedly borrowing master of negligent servant, where questions of fact existed as to whether requirements for application of borrowed servant doctrine had been met). Neither *Ross* nor any of the other cases cited by the parties hold that a different rule should apply to exclude borrowed servants from this basic principle of respondeat superior in the operating room context. The fact that the borrowed servant doctrine was used defensively in *Ross* and other cases by hospitals or other institutions (and thus was discussed in those cases in terms reflecting that defensive use) is merely a function

9

of the procedural posture of those cases, not support for the deviation from settled principles of respondeat superior proposed by the defendants.

Moreover, the position advocated by the defendants would result in unnecessary lawsuits being filed against hospitals or other similarly-situated institutions in cases where the undisputed facts showed those institutions had no liability. The defendants' own appellate brief illustrates this undesirable result. The defendants contend that a plaintiff is not entitled to jury charges on the doctrines of respondeat superior, agency, or imputed liability because "[t]he [b]orrowed [s]ervant [d]octrine provides the *only* avenue in Georgia through which liability for the alleged negligent act of a hospital employee [can] be imputed to an independent physician." (Emphasis supplied.) But the defendants also contend that a plaintiff is not entitled to a jury charge on the borrowed servant doctrine unless the plaintiff sues the hospital as well as the doctor. As a result, under the defendants' view, the only way that a plaintiff injured by the negligence of hospital personnel working as the borrowed servants of an operating room doctor can seek recovery against that doctor is to sue the hospital, even if, under the borrowed servant doctrine, the undisputed evidence showed that the hospital had no liability whatsoever.

We have found no Georgia authority that requires the outcome proposed by the defendants – forcing medical malpractice plaintiffs to sue hospitals merely to preserve their causes of action against doctors. Given the lack of authority demanding this outcome, we decline to read into Georgia's doctrine of respondeat superior an exception for borrowed servants that would impose such a requirement upon medical malpractice plaintiffs.

(ii) But the specific charge requested by the Hendleys on the borrowed servant doctrine was not a fully accurate statement of the law. Their requested charge stated: "Once a doctor enters the operating room and takes charge of the proceedings then the doctor becomes the master of all of the operating room personnel and their negligence during the course of the master-servant relationship will be imputable to the doctor." This charge did not comport with the requirements for a transfer of liability under the borrowed servant doctrine as articulated by our Supreme Court in *Ross*, which included the additional requirement that the tasks performed by the borrowed servants involve professional skill and judgment. See *Ross*, 258 Ga. at 235 (1). Accordingly, the trial court did not err in declining to give this specific charge.

(iii) Nevertheless, the court was required to instruct the jury on the law as to every controlling, material, substantial and vital issue in the case, whether or not a

11

proper charge was requested. *Duffield*, 314 Ga. App. at 214-215. As explained below, Dr. Evans's vicarious liability for the negligence of hospital personnel was such an issue in this case. Accordingly, the trial court erred in failing to instruct in some manner on this issue – whether by modifying the Hendleys' requested charge on the borrowed servant doctrine, by giving one of the other instructions requested by the Hendleys on the principles of respondeat superior, agency or imputed negligence, or by devising its own charge on the issue. Id.

The trial evidence justified a charge on the issue of Dr. Evans's vicarious liability for the negligence of hospital personnel regarding the ventilation of Mrs. Hendley during the Code Blue. The Hendleys presented some evidence from which a jury could infer that the hospital employees in the operating room at the time of the Code Blue breached the standard of care in their treatment of Mrs. Hendley by not providing her with proper ventilation (which the parties refer to as being "masked and bagged") prior to her being intubated. The Hendleys' expert witness testified that it appeared from the records that "there was nobody in the room attending to [Mrs. Hendley's] respondatory status," and that this constituted a deviation from the standard of care.

And there was some evidence from which a jury could find the requirements for a transfer of any liability for these hospital employees' acts and omissions from the hospital to Dr. Evans. Although the defendants argue that there was no evidence that the hospital had completely yielded control over the operating room personnel to Dr. Evans, Dr. Evans himself agreed at trial that, when he entered the operating room to perform the angioplasty procedure, he "took control of [the] surgical suite" and that, as the operating physician, he gave direct orders to the four other people in the room. He also testified that, during the Code Blue, he delegated tasks to the other people in the operating room. The defendants' expert witnesses also agreed that Dr. Evans directed the actions of the others during the Code Blue. The defendants do not argue that the actions of the operating room personnel pertaining to the ventilation and resuscitation of Mrs. Hendley during the Code Blue were not actions requiring professional skill or judgment.

We agree with the defendants, however, that there was not trial evidence to support the Hendleys' other argument, that Dr. Evans was vicariously liable in regard to an air bubble that may have entered Mrs. Hendley's circulatory system at some point during one of her procedures. The Hendleys have pointed to no evidence in the record tying the suspected air bubble to any act or omission of a hospital employee

13

during the time when Dr. Evans was in the operating room to perform the angioplasty procedure or during the subsequent Code Blue. See generally *Doctors Hosp. of Augusta v. Bonner*, 195 Ga. App. 152, 164 (8) (392 SE2d 897) (1990) (borrowed servant doctrine did not apply where doctor alleged to be borrowing employer was not present in operating room when acts of negligence by certified registered nurse anesthetist occurred). Instead, the evidence pertaining to the suspected air bubble suggested that, if such an air bubble occurred at all, it was introduced through the use of equipment during the earlier catheterization procedure, before Dr. Evans entered the operating room.

In summary, there was evidence supporting the Hendleys' theory that Dr. Evans should be held vicariously liable, under the principle of respondeat superior, for negligence of hospital personnel pertaining to the ventilation of Mrs. Hendley during the Code Blue. Accordingly, vicarious liability was a properly asserted and legally cognizable theory of the Hendleys' recovery. Because the trial court failed to charge on this theory of recovery, we must reverse. See *Duffield*, 314 Ga. App. at 214-216; see also *Miller*, 142 Ga. App. at 619 (reversing judgment on jury verdict where trial court failed to charge jury on vicarious liability based on borrowed servant doctrine). It will be for the trial court on retrial to determine the specific charge to

give the jury on this issue, consistent with the evidence presented on retrial and the requirements set forth in *Ross*, supra, 258 Ga. 234.

(b) *The trial court did not err in failing to charge the jury on evidentiary presumptions.*

The Hendleys requested that the trial court give the following two pattern charges on evidentiary presumptions:

> When a party has evidence that rejects (or disproves) a claim or charge made against the party and he/she fails to produce it, or having more certain and satisfactory evidence, relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim is well founded. This presumption may be rebutted, however.

Suggested Pattern Jury Instructions, Vol. I: Civil Cases § 02.160 (2010).

> If a party fails to produce an available witness, the jury shall determine whether such a failure warrants the inference that the witness, if produced, would have testified to facts prejudicial to the party failing to produce the witness.

Suggested Pattern Jury Instructions, Vol. I: Civil Cases § 02.161 (2010). The charges derive from OCGA § 24-4-22, which provides that

> [i]f a party has evidence in his power and within his reach by which he may repel a claim or charge against him but omits to produce it, or if he

15

> has more certain and satisfactory evidence in his power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against him is well-founded; but this presumption may be rebutted.

Comparable provisions to this Code section have been included in the revision to Georgia's evidence code, which goes into effect on January 1, 2013. See OCGA § 24-14-22.

(i) The Hendleys argue that pattern charge § 02.160 should have been given because the defendants failed to produce evidence regarding whether Mrs. Hendley was ventilated, through the method the parties refer to as being "masked and bagged," before being intubated. But the principle set forth in OCGA § 24-4-22 applies only in cases where it is shown that a party has withheld evidence within the party's power and control, and an instruction on that principle should be given only in "exceptional cases." (Citation omitted.) *AT Systems Southeast v. Carnes*, 272 Ga. App. 671, 674 (3) (a) (613 SE2d 150) (2005). See also *Cotton States Fertilizer Co. v. Childs*, 179 Ga. 23, 31 (174 SE 708) (1934). Compare *Eddie Parker Interests v. Booth*, 160 Ga. App. 15, 16-17 (285 SE2d 753) (1981) (applying presumption against party which admitted that relevant, unproduced evidence "most likely" was in its files). Here, the evidence included medical records regarding the treatment of Mrs. Hendley during

16

the Code, and the defendants introduced testimonial evidence that the notations in those records were consistent with her receiving ventilation as part of cardiopulminary resuscitation efforts. The Hendleys have pointed to nothing showing that the defendants withheld other medical records or any other evidence on this issue that was within their power and control. Under these circumstances, the trial court did not err in declining to give the requested charge.

(ii) The Hendleys argue that pattern charge § 02.161 should have been given because the defendants did not produce testimony from Dr. Evans, doctors who were partners in the Valdosta Medical Clinic, or any other witness to rebut the medical records that the Hendleys contend showed that Mrs. Hendley was not "masked and bagged." The requested charge was inapplicable to Dr. Evans, because the evidentiary presumption does not apply to the decision of a party defendant not to testify, see *Maloy v. Dixon*, 127 Ga. App. 151, 154-155 (2) (a) (193 SE2d 19) (1972), and because, in any event, Dr. Evans *did* testify (albeit on cross-examination during the Hendleys' case-in-chief). Pretermitting whether the rule regarding a party defendant also would apply to the other doctors who are partners of defendant Valdosta Medical Clinic, the Hendleys have pointed to nothing in the record demonstrating that any of those doctors who did not testify had any personal knowledge relevant to the issues

17

in this case. (One of Dr. Evans's partners in the Valdosta Medical Clinic did testify – the doctor who performed the initial diagnostic catheterization procedure on Mrs. Hendley.) Finally, as stated above, the defendants *did* present witness testimony rebutting the Hendleys' interpretation of the medical records. Under these circumstances, the trial court did not err in declining to give the requested charge.

(c) *The trial court did not err in failing to give the jury the Hendleys' requested charge on circumstantial evidence.*

The Hendleys argue that the trial court erred in declining to give the following charge: "I charge you that circumstantial as well as direct evidence may be used to prove negligence." The trial court, however, did charge the jury that "[b]oth direct and circumstantial evidence may be used to prove the facts upon which any expert relies in formulating his opinion that negligence occurred." And the trial court charged the jury on the definitions of circumstantial evidence and direct evidence and instructed the jury that "[t]he comparative weight of circumstantial and direct evidence on any given issue is a question of fact for you to decide." Because the charges given by the trial court covered the principle addressed by the Hendley's requested charge, we find no error in the court's decision not to give the requested

18

charge. See *Georgia Dept. of Transp. v. Miller*, 300 Ga. App. 857, 865 (4) (b) (686 SE2d 455) (2009).

(d) *The trial court did not err in charging the jury on accepted risk.*

The Hendleys argue that the trial court erred in giving the following jury charge:

> I charge you that in the event a plaintiff develops a certain condition or an event occurs which is recognized to be an accepted risk or known complication of medical treatment, that on its own is not proof of negligence. It is for you to determine whether such condition is a medically accepted risk, known complication of plaintiffs' medical treatment, or negligence.

The first sentence of the challenged charge is a correct statement of law. *Barham v. Levy*, 228 Ga. App. 594, 595 (1) (492 SE2d 325) (1997). Although the Hendleys contend that the second sentence of the charge was confusing, we agree with the defendants that, when viewed in the context of the charge as a whole, which included instructions on the "law concerning an allegation of professional negligence and, in particular, . . . the standards of care and what must have been established in order to hold Dr. [Evans] liable," id., the trial court did not err in giving the charge.

19

3. *Hearsay evidence.*

The Hendleys also argue that the trial court erred in excluding as hearsay testimony from a person who was working in the operating room at the time of the Code Blue. They proffered that this witness would testify that she heard another person in the room – whom she could not identify – mention a "possible air embolus" during the Code. The Hendleys argue that this testimony should have been allowed under the res gestae exception to the hearsay rule. We decline to review the trial court's decision on this issue, because as of January 1, 2013, Georgia's evidence rules will change and any opinion we might make on the admissibility of the evidence on retrial under the new evidence rules would be advisory. See generally *Huff v. Harpagon Co.*, 286 Ga. 809, 811 (2) (692 SE2d 336) (2010) ("Georgia appellate courts are not authorized to render advisory opinions as to potential error") (citations and punctuation omitted).

*Judgment reversed. Barnes, P. J., and Adams, J., concur.*