NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.



# SUPREME COURT OF GEORGIA
Case No. S23C0765

November 7, 2023

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

CAROLE MASO et al. v. BRIAN ZEH et al.

The Supreme Court today denied the petition for certiorari in this case.

*All the Justices concur, except Bethel, Ellington, and Colvin, JJ., who dissent. Peterson, P. J., disqualified.*

Court of Appeals Case No. A22A1289

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

_____, Clerk

PINSON, J. concurring in the denial of certiorari.

This is a medical-malpractice action seeking to hold a physician vicariously liable for the alleged negligence of a physician assistant. The petitioner, whose husband died after a medical procedure the physician assistant helped with, asked us to review the Court of Appeals' holding below that the Physician Assistant Act (PAA), OCGA § 43-34-100 et seq., does not "create[] vicarious liability for supervising physicians for the medical acts of their PAs." *Zeh v. Maso*, 366 Ga. App. 890, 894 (884 SE2d 563) (2023).

There is a reasonable argument that a physician who delegates medical tasks to a physician assistant under the arrangement authorized by the PAA is vicariously liable for the physician assistant's performance of medical tasks under that arrangement. Dating back to the common law, a principal has been vicariously liable for the torts of an agent acting on his behalf, including in the context of health care. See OCGA § 51-2-1 (a) ("For the negligence of one per-

2

son to be properly imputable to another, the one to whom it is imputed must stand in such a relation or privity to the negligent person as to create the relation of principal and agent.").[1] The relationship the PAA sets up between a supervising physician and a physician assistant looks a lot like a principal-agent relationship.[2] Compare OCGA § 10-6-1 (an agent-principal relationship "arises whenever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf") with id. § 43-34-102 (7) (a physician assistant is "qualified…to provide patients' services not necessarily within the physical presence but under the personal direction or supervision of the supervising physician"); id. § 43-34-102 (4) (limiting a physician assistant's duties to the "scope of practice of the primary supervising physician");

---

[1] This language has remained largely unaltered since first introduced. See, e.g., Civil Code of 1895, § 2902; Code of 1933, § 105-205.

[2] The PAA enables physicians to delegate health care tasks to physician assistants. Under the Act, the "physician who will be responsible for the performance of such physician assistant" submits an application to the Georgia Composite Medical Board that describes the work a licensed physician assistant will do within the scope of the supervising physician's practice. OCGA §§ 43-34-102 (4); 43-34-103 (a) (2). If approved, the board issues the physician assistant a "license authorizing the assistant to perform medical tasks under the direction and supervision of the physician." Id. § 43-34-104 (b).

id. § 43-34-105 ("[A] physician assistant, under the direction of the applying physician, may perform the tasks described in the job description" and additional tasks "performed under the direct supervision and in the presence of the physician utilizing him or her"); id. § 43-34-109 ("When a patient receives medical services from a physician assistant, the supervising physician's involvement in the patient's care…shall be appropriate to the nature of the practice and the acuity of the patient's medical issue, as determined by the supervising physician"). And I do not see clear evidence in the PAA that the legislature modified or displaced the longstanding principles of vicarious liability that would apply to such relationships. See, e.g., OCGA § 43-34-103 (a) (2) ("[T]he licensed physician who will be responsible for the performance of [the] physician assistant shall submit an application to the board…"). In short, if a supervising physician and physician assistant are in a principal-agent relationship, then under ordinary principles of vicarious liability, the physician would be liable for the physician assistant's acts performed on the physician's behalf. See OCGA § 51-2-1 (a).

4

Here's the rub: the argument I've just outlined doesn't appear to be available to the petitioner in this case. That argument depends on a claim that physicians are vicariously liable for the acts of the physician assistants they supervise because they are in a principal-agent relationship. But no such claim is before us here: although the plaintiff raised a separate claim of vicarious liability under an "actual agency" theory in the trial court, the court rejected that claim, and that ruling was not cross-appealed. So the only ruling the Court of Appeals addressed below was the trial court's ruling that the physician here was liable for the PA's conduct because the *PAA itself* imposed that liability, and the Court of Appeals' rejection of that ruling is the only issue that would be properly before us if we granted review. In short, the Court of Appeals did not answer the broader question whether a supervising physician is vicariously liable for the acts of a physician assistant serving at his direction as authorized by the PAA, and that question is not presented here in a

way that would allow us to address it fully.[3]

That said, this question is undoubtedly an important one, particularly given the prevalence of physician assistants across Georgia and their role in the General Assembly's mission to "alleviate the growing shortage and geographic maldistribution of health care" across the State. OCGA § 43-34-101 (a).[4] So I agree with the Court's

---

[3] Further complicating our review of this question, it appears that the physician sued in this case is not the "primary supervising physician" of the physician assistant here. Although I do not discount the possibility that any given supervising physician and physician assistant could be in a principal-agent relationship under the right circumstances, making that case seems more straightforward in the context of the formal relationship created under the PAA between a primary supervising physician and the physician assistant. See OCGA § 43-34-102 (9) ("'Primary supervising physician' means the physician to whom the board licenses a physician assistant pursuant to a board approved job description and who has the primary responsibility for supervising the practice of a physician assistant pursuant to that physician assistant's job description."); id. § 43-34-103 (a) (2) (describing the physician who applies to the board to utilize a physician assistant as "the licensed physician who will be responsible for the performance of such physician assistant"); id. § 43-34-104 (a) (explaining that if the board approves an application, the assistant gets a license "authorizing the assistant to perform medical tasks *under the direction and supervision*" of the applying physician).

[4] Similar questions of vicarious liability may arise with respect to nurse practitioners. Like physician assistants, nurse practitioners provide medical care under a physician's oversight and their duties are delineated in a written document signed by the physician overseeing them. See Ga. Comp. R. & Regs., r. 410-11-.13 (2) (c) (requiring a written "nurse protocol" specifying medical acts delegated by the physician to an advanced practice registered professional nurse); id. r. 410-11-.01 (2) (a) (defining "advanced practice registered nurse"

6

decision not to grant further review of this case, but I am open to reviewing these important questions about vicarious liability in an appropriate case.

I am authorized to state that Justice Warren joins in this concurrence.

---

to include nurse practitioners). See also OCGA § 43-34-23 (b) (1) (allowing physicians to delegate certain duties to either nurse practitioners or physician assistants).