**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 29, 2024**

# In the Court of Appeals of Georgia

A23A1419. STATHAM v. QUANG et al.

MARKLE, Judge.

After Jacqueline Statham was injured following a routine gynecological surgery, she filed suit against her surgeons, David S. Quang and Tan-Loc Nguyen, and their employer, Women's Healthcare, Inc. of Middle Georgia, P. C. ("Women's Healthcare," collectively "defendants"), for medical negligence due to their failure to properly supervise a medical student who assisted in the procedure. The parties filed cross motions for partial summary judgment, regarding whether defendants were vicariously liable for the student's alleged medical negligence. The trial court found that defendants were not vicariously liable as a matter of law for the acts or omissions of the medical student, but that questions of fact exist as to the negligence and

supervision claim. Statham now appeals, arguing that the trial court erred by finding defendants were not vicariously liable. After a thorough review of the record, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing a grant or denial of summary judgment, we owe no deference to the trial court's ruling and we review de novo both the evidence and the trial court's legal conclusions. Moreover, we construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. In doing so, we bear in mind that the party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact.

(Citation omitted.) *Adams v. Piedmont Henry Hosp.*, 365 Ga. App. 257, 258 (878 SE2d 113) (2022).

So viewed, the record shows that, in August 2019, Drs. Quang and Nguyen performed a total laparoscopic hysterectomy on Statham, with the assistance of a medical student whom they were responsible for directing and supervising. The medical student attended Philadelphia College of Osteopathic Medicine, Inc., a/k/a PCOM of Georgia ("PCOM"). As part of a clinical training affiliation agreement

("the agreement"), PCOM contracted with the surgeons to provide the student with supervised medical training through the school's clerkship program. According to the agreement, the medical student was not considered an employee or agent of the surgeons. The student did not receive compensation or employment benefits from the surgeons, and both the school and the surgeons were mutually vested with the right to terminate the student's participation with the doctors. PCOM paid Drs. Quang and Nguyen to supervise the medical student.

Quang was the primary surgeon and Nguyen was his first assistant, and both were employees of Women's Healthcare. During the procedure, the student's role was to sit between Statham's legs and place a sponge stick into Statham's vagina to serve as a landmark for the surgeons while performing the procedure and use it to manipulate the area as the surgeons directed. The surgeons observed the student place the sponge stick into the vagina, and it appeared to be positioned correctly. At some point during the procedure, however, the student moved the sponge stick, resulting in a two centimeter thermal burn in Statham's rectum. When the surgeons realized the damage, they attempted to repair it during the surgery, and they prescribed her antibiotics. Following the surgery, Statham complained of a vaginal odor and

3

discharge. Because of the injury to her rectum, Statham developed a rectovaginal fistula,[1] causing feces to enter her vagina, which required additional surgeries to repair.

Statham sued the surgeons, Women's Healthcare, and Houston Hospitals, Inc. d/b/a Houston Medical Center ("HMC"), alleging that they breached the standard of care by failing to adequately supervise the medical student who assisted in the procedure. Statham attached an expert affidavit to her complaint, which opined that the surgeons failed to adequately supervise the medical student's placement of the sponge stick; failed to recognize this error and assumed the stick was properly placed; and they breached the standard of care, resulting in Statham's rectovaginal fistula. Statham also sued PCOM and HMC, but the trial court granted both summary judgment, and Statham does not appeal from these orders.

Statham moved for partial summary judgment against the defendants, asking the trial court to declare that the surgeons were vicariously liable for the medical student's negligence because she was a borrowed servant under their direct supervision and control at the time of the surgery, and that, by granting summary

---

[1] A fistula is "an abnormal connection between two body parts, such as an organ or blood vessel and another structure. Fistulas are usually the result of an injury or surgery." https://mountsinai.org/health-library/special-topic/fistula (last visited January 29, 2024).

judgment to PCOM, the trial court had established as a matter of law that PCOM had no control over the student. Defendants also moved for partial summary judgment, asserting there were no genuine issues of material fact to support that they were negligent in supervising the student, and they were not vicariously liable because the student was not an agent, employee, or borrowed servant. Following a hearing, the trial court granted in part and denied in part defendants' motion, finding that defendants were not vicariously liable for any acts or omissions of the medical student, but that questions of fact remained as to whether the surgeons negligently supervised her. It also denied Statham's motion. This appeal followed.[2]

In her sole enumeration of error, Statham contends the trial court erred by finding the surgeons were not vicariously liable for the medical student's negligence as a matter of law because they could be liable under agency principles or the borrowed servant doctrine. Statham also contends that, because the trial court has already determined as a mater of law that PCOM had no control over the student during the surgery, the surgeons are vicariously liable for the student's negligence. We

---

[2] Defendants have not filed a cross appeal as to the trial court's denial of their motion for partial summary judgment on Statham's failure to supervise claim. Also, defendants did not seek summary judgment on Statham's claims arising from their own alleged negligence.

conclude the trial court properly determined the surgeons were not vicariously liable as a matter of law, and thus we affirm.

Before reaching the merits of Statham's argument, we first set forth the relevant law.

Under vicarious liability, "[e]very person shall be liable for torts committed by . . . his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily." OCGA § 51-2-2; see also *Prodigies Child Care Mgmt. v Cotton*, 317 Ga. 371, 376-377 (2) (a) (893 SE2d 640) (2023). With regard to agency principles, OCGA § 10-6-1 provides: "[t]he relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." OCGA § 10-6-51 further provides that "[t]he principal shall be bound by all the acts of his agent within the scope of his authority[.]" Additionally,

> A doctor may be found liable under the theory of respondeat superior for the negligent acts of his employees. The traditional definition of 'employee' has for at least a century contained within its purview borrowed servants. Ordinarily, when one lends his servant to another for a particular employment, the servant will be dealt with as a servant of the person to whom he is lent, although he remains the general servant of the

6

person who lent him. Accordingly, the borrowed servant doctrine is applied in the context of the tort doctrine of respondeat superior. It is a means of transferring the vicarious liability for an employee's negligence from a lending employer to a borrowing employer. The requirements for the borrowed servant doctrine to apply are well settled in this state. In order for an employee to be a borrowed employee, the evidence must show that (1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control, and (3) the special master had the exclusive right to discharge the servant. The three prongs of this test focus on the occasion when the injury occurred rather than the work relationship in general.

(Citations and punctuation omitted.) *Hendley v. Evans*, 319 Ga. App. 310, 312-313 (2) (a) (i) (734 SE2d 548) (2012); see also *Hoffman v. Wells*, 260 Ga. 588, 590 (2) (397 SE2d 696) (1990) (explaining borrowed servant doctrine's effect on transfer of vicarious liability from lending employer to borrowing employer); *Ross v. Chatham County Hosp. Auth.*, 258 Ga. 234, 235 (1) (367 SE2d 793) (1988) (same).

In the medical context involving the negligent acts of hospital employees during surgery, the three prong test, requires the hospital to show that it

(1) yielded control of its employees who are assisting in a surgical procedure; . . . (2) the employees whose negligence the hospital seeks to impute to the surgeon are under the "immediate supervision" of the

7

surgeon; . . . and (3) [the] tasks [involved] professional skill and judgment.

*Ross*, 258 Ga. at 235 (1); see also *Hendley*, 319 Ga. App. at 315 (2) (a) (ii).[3] With these principles in mind, we turn to the specifics of Staham's arguments, finding them to be without merit.

(a) *Agency principles do not apply.*

Statham contends the medical student was an agent of the defendants during the medical procedure, and thus they are vicariously liable for her negligence because they had immediate supervision and control over her. Statham, however, cannot impose vicarious liability on the surgeons for the medical student's negligence because there is no agency or employment relationship between the parties.

Georgia law is clear that when considering the relationship between parties, a written contract controls the terms and scope of that relationship. And where the contract establishes the responsibility of the parties it also establishes whether the

---

[3] In Georgia, Statham could not sue the medical student directly because, under OCGA § 51-1-38 (a), she was immune from suit absent any wilful misconduct. The surgeons, however, were not immune from suit. OCGA § 51-1-38 (b) ("[T]his Code section shall not be construed to affect or limit the liability of a medical facility, academic institution, or doctor of medicine.").

borrowed servant doctrine or other agency principles apply. *Montgomery Trucking Co. v. Black*, 231 Ga. 211, 213 (200 SE2d 882) (1973); see also *Garden City v. Herrera*, 329 Ga. App. 756, 760 (1) (766 SE2d 150) (2014). Furthermore, we look to the unambiguous language of the contract to ascertain the parties' intent.

> The cardinal rule of contract construction is to ascertain the intention of the parties, as set out in the language of the contract. . . . The first step is to decide whether the language of the contract is clear and unambiguous. If so, the contract is enforced according to its plain terms, and the contract alone is looked to for meaning. . . . So, when the terms of a contract are clear and unambiguous, the reviewing court looks only to the contract itself to determine the parties' intent.

(Citations, punctuation, and emphasis omitted.) *Emory Healthcare v. van Engelen*, 362 Ga. App. 818, 821-822 (870 SE2d 223) (2022).

Here, the agreement between PCOM and the host agency specified that the medical student was not considered an employee or agent of the practice, nor was the agreement intended to create any agency, employer/employee, or fiduciary relationship between the parties. The parties' contract provided only that the practice was to provide the medical student with supervised medical training through PCOM's clerkship program. No compensation or employment benefits from the practice were

conferred on the medical student, and both the practice and PCOM were mutually vested with the right to terminate the student's participation in the program. The fact that PCOM paid the surgeons to supervise the medical student in no way alters the parties' intent that no agency or employment relationship would be created under the agreement with respect to the medical student, who was not so paid. Because the clear and unambiguous terms of the agreement show that the parties did not intend for it to create an agency or employment relationship, we conclude that no such relationship existed. *Emory Healthcare*, 362 Ga. App. at 821-822; see also *Montgomery Trucking Co.*, 231 Ga. at 213; *Garden City*, 329 Ga. App. at 760 (1).

(b) *The borrowed servant doctrine does not apply.*

Moreover, Statham has not shown that the medical student was a borrowed servant so as to make the surgeons vicarious liable. *Ross*, 258 Ga. at 235 (1)*; Hendley*, 319 Ga. App. at 312-313 (2) (a) (i). Statham asserts that, because the surgeons had the right to control and direct the medical student's conduct, that she falls under the borrowed servant doctrine. This, however, is only one prong of the three prong test, and Statham cannot satisfy the other prongs. First, with regard to the borrowed servant doctrine in general, the surgeons did not retain the *exclusive* right to terminate

the medical student from the program; rather both parties retained that right. *Hendley*, 319 Ga. App. at 312-313 (2) (a) (i). Second, with regard to the borrowed servant doctrine in the medical context, the medical student's participation in the surgery did not require a level of "professional skill or judgment," but rather only involved her placing and holding the sponge stick as the surgeons directed. *Ross*, 258 Ga. at 235 (1). Accordingly, the borrowed servant doctrine does not apply.

Notably, Statham concedes the student was a medical student of PCOM and not an employee.[4] As such, there was no employment relationship between the parties for the borrowed servant doctrine to apply here. *Hendley*, 319 Ga. App. at 312 (2) (a) (i) ("a means of transferring the vicarious liability for an *employee's* negligence from a *lending employer* to a *borrowing employer*.") (emphasis supplied).

In this regard, Statham's reliance *on Central Anesthesia Assoc. v. Worthy*, 173 Ga. App. 150 (325 SE2d 819) (1984), for the proposition that the surgeons should be held vicariously liable for the medical student's negligence is misplaced. In *Central Anesthesia*, we held that, by statute, the administration of anesthesia to a patient by a

---

[4] Statham argues that Defendants' cannot point to any case law in support of their position that Smith was not a borrowed servant from PCOM because she was not a paid employee of the school. This argument, however, is unavailing because, as discussed, the current case law establishes other prerequisites to apply the doctrine.

11

student nurse anesthetist could only be performed under the direct supervision of a licensed physician, and that failure to follow the standard set by statute could subject the physician to liability. Id. at 152-154. Nothing in *Central Anesthesia* stood for the proposition that a surgeon is vicariously liable for the negligence of a medical student in the operating room under the terms of the agreement here.

(c) *The legislature did not intend to impose vicarious liability.*

Furthermore, OCGA § 51-1-38 (b) clearly does not impose vicarious liability on the surgeons for the student's alleged negligence. Although the statutory language of OCGA § 51-1-38 (a) expressly excludes liability of students working toward a medical degree, the legislature was certain to ensure that a surgeon's liability was not so limited under OCGA § 51-1-38 (b). What the statute does not provide, however, is that a surgeon *shall* be vicariously liable for the acts or omissions of a medical student. The legislature could have imposed vicarious liability on doctors for the negligence of medical students under their supervision, but it chose not to do so. As we have recently held in *Zeh v. Maso*, 366 Ga. App. 890, 894 (1) (884 SE2d 563) (2023), in examining vicariously liability under the Physician Assistant Act ("PAA"), OCGA § 43-34-100 et seq.,

[t]he General Assembly is presumed to have been aware of existing law, including vicarious liability principles, when it enacted the PAA. . . . [T]he language of the PAA does not expressly impose vicarious liability on supervising physicians for the negligent acts of their PAs. The General Assembly knows how to impose liability by statute when it chooses to, and we will not read into the PAA language that the General Assembly did not include.

(Citations and punctuation omitted.) 366 Ga. App. at 894 (1). For this additional reason, we conclude the trial court properly found the surgeons were not vicariously liable for the medical student's actions.

(d) *Statham can still pursue negligent supervision and direct professional negligence against the surgeons.*

Finally, Staham appears to suggest that the trial court erred in denying her motion for partial summary judgment on the surgeons' vicarious liability because it had already found that PCOM was not vicariously liable for the medical student's actions; thus, she has no other recourse. This argument, however, is without merit.

The trial court's finding that the surgeons cannot be held vicariously liable as a matter of law does not foreclose all of Statham's remedies. As discussed above, OCGA § 51-1-38 (b) does not limit the liability of the surgeons for their own alleged

negligence in performing the surgery, and it does not preclude the claims for negligent supervision.

Accordingly, the trial court properly concluded that the defendants were not vicariously liable, and we affirm.

*Judgment affirmed. Brown, J,. concurs in judgment only. McFadden, P. J., concurs in part and dissents in part.*

# In the Court of Appeals of Georgia

A23A1419. STATHAM v. QUANG et al.

McFADDEN, Presiding Judge, concurring in part and dissenting in part.

We cannot determine as a matter of law on the record before us whether or not the defendant surgeons and their practice are vicariously liable for any negligence on the part of the medical student. That determination must be made by a jury. So I concur in the majority's holding that plaintiff Statham is not entitled to summary judgement on that issue but respectfully dissent from the majority's holding that the defendants are.

Principals are liable for the negligence of their agents. OCGA § 10-6-51. At issue is whether the medical student was defendants' agent under general principles of

agency and alternately whether she was their agent under the borrowed-servant doctrine. I would hold that both issues must be resolved by a jury.

1. *Agency, general principles*

Several provisions of our Code address agency principles. OCGA § 10-6-51 provides, "The principal shall be bound by all the acts of his agent within the scope of his authority. . . ." As for tort liability specifically, OCGA § 51-2-2 provides, "Every person shall be liable for torts committed by . . . his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily." But "[f]or the negligence of one person to be properly imputable to another, the one to whom it is imputed must stand in such a relation or privity to the negligent person as to create the relation of principal and agent." OCGA § 51-2-1 (a).

The principal-agent relationship "arises wherever one person, expressly or by implication, authorizes another to act for him. . . ." OCGA § 10-6-1. "[I]f a supervising physician and [medical student] are in a principal-agent relationship, then under ordinary principles of vicarious liability, the physician would be liable for the [medical student's] acts performed on the physician's behalf." *Maso v. Zeh*, 317 Ga. 769, 770 (895 SE2d 256) (2023) (Pinson, J., concurring in denial of certiorari).

3

"Questions regarding the existence of agency . . . are generally for the trier of fact." *Renfroe v. Warren-Hawkins American Legion Post No. 523*, 157 Ga. App. 614 (278 SE2d 414) (1981).

> To prove actual agency, the purported principal must have assumed the right to control the method, manner, and time of the purported agent's work, as distinguished from the right merely to require certain definite results in conformity to the contract. *The right to control the purported agent's time means the right to control the hours of work.* The right to control the method and manner of work means the right to tell the purported agent how to perform all details of the job, including the tools he should use and the procedures he should follow.

*Satisfaction & Service Housing v. SouthTrust Bank*, 283 Ga. App. 711, 713 (642 SE2d 364) (2007) (emphasis added; citations and punctuation omitted).

Statham points to evidence that the defendants controlled the manner and method of the medical student's work during Statham's surgical procedure, but she does not point to evidence that the defendants had "the right to control the hours of [her] work." *Satisfaction & Service Housing*, 283 Ga. App. at 713.

A review of the record shows that the medical student did testify about the hours of her work during her deposition. When Statham's counsel asked how she knew what she would be doing on any given day, the medical student responded,

4

Usually we would either ask the attending what time they wanted us to arrive, or we were provided with a schedule to where we were going to be each day. For OB/GYN specifically, we usually if I remember correctly would check with the attending who they wanted us to — if we were going to be in the operating room, who they wanted us to preround on before the procedure.

She did not specify who provided the schedule. When the attorney asked her whether she spoke with Quang before Statham's surgical procedure, she responded, "Possibly with him or Dr. Nguyen. I honestly don't remember exactly who told me or which time I would be attending the surgery, usually it was just this is the time you come. I don't remember the time, and be there."

The medical student's use of the qualification "usually" and her passive-voice testimony about sometimes being provided a schedule and about being told "this is the time you come" leave open some possibility that someone other than the defendants might have had a hand in setting her schedule. So Statham has not shown that she is entitled to summary judgment on the issue of whether the medical student was the defendants' agent.

The defendants argue, and the majority holds, that the contract between the medical school and the defendants establishes as a matter of law that the medical

5

student was not the defendants' agent. But the cases they cite in support all concern the relevance of such a contract in imposing vicarious liability under the borrowed-servant doctrine, not under general agency principles. And under Georgia law, the terms the parties contractually assign to themselves or others is not dispositive of status for purposes of general agency principles in tort law. *Doctors Hosp. of Augusta v. Bonner*, 195 Ga. App. 152, 161 (6) (a) (392 SE2d 897) (1990). See also Restatement (Third) Of Agency § 1.02 (2006). Other factors that show the actual nature of the relationship may negate these contractual labels. *Doctors Hosp. of Augusta*, 195 Ga. App. at 161 (6) (a) (contractual label of independent contractor does not determine that such a person is not an agent because other factors may negate the label).

"[N]othing appearing to show conclusively that these defendants [are] entitled to judgment as a matter of law, the trial court erred in sustaining [their] motion[ ] for summary judgment." *Allen & Bean v. American Bankers Ins. Co.*, 153 Ga. App. 617, 619 (266 SE2d 295) (1980). But because Statham likewise has not shown that she is entitled to judgment as a matter of law on the issue, the trial court did not err in denying her motion for summary judgment.

2. *Agency, borrowed-servant doctrine*

I disagree with the majority's holding and the defendants' argument that because the medical student was a student and not an employee — presumably because she was not paid — the borrowed-servant doctrine does not apply at all. "Consideration is not necessary to create the relation of principal and agent. . . ." Restatement (Second) of Agency § 225 (1958), cmt. a. See also Restatement (Third) of Agency § 7.07 (2006) (for purposes of vicarious liability, "(a) an employee is an agent whose principal controls or has the right to control the manner and means of the agent's performance of work, and (b) the fact that work is performed gratuitously does not relieve a principal of liability."); *May v. Harper Hosp.*, 185 Mich. App. 548 (462 NW2d 754) (1990) (applying borrowed-servant doctrine in wrongful-death action and holding that school was not liable for student's negligence because student was stationed at hospital, was under supervision of hospital employees, was using hospital's machines and equipment, and had been instructed to conduct herself according to hospital's protocols).

Turning to application of the doctrine to this case, Georgia law provides that a physician may be vicariously liable for the negligent acts or omissions of others under the borrowed-servant doctrine. See generally *Ross v. Chatham County Hosp. Auth.*, 258 Ga. 234 (367 SE2d 793) (1988); *Hendley v. Evans*, 319 Ga. App. 310, 312 (2) (a) (i) (734

7

SE2d 548) (2012). And, as the majority holds, "the contract between the [alleged lending employer and the alleged borrowing employer] is controlling as to their responsibilities thereunder." *Montgomery Trucking Co. v. Black*, 231 Ga. 211, 213 (200 SE2d 882) (1973).

So we first look to the contract between the school (the alleged lending employer) and the defendants (the alleged borrowing employer) to determine whether the medical student should be deemed a borrowed servant of the defendants. That determination depends on three factors: whether the school yielded control of the medical student; whether the medical student was under the immediate supervision of the defendants; and whether the tasks performed by the medical student involved professional skill and judgment. See *Ross*, 258 Ga. at 234-235 (1); *Hendley*, 319 Ga. App. at 313 (2) (a) (i); *Garden City v. Herrera*, 329 Ga. App. 756, 758-759 (1) (766 SE2d 150) (2014). "The three prongs of this test focus on the occasion when the injury occurred rather than the work relationship in general." *Hendley*, 319 Ga. App. at 313 (2) (a) (i) (citations and punctuation omitted). Accord *Garden City*, 329 Ga. App. at 759 (1).

In this case, the contract between the school and the defendants establishes the first two factors: the school did yield control of the medical student, and the medical

student was under the immediate supervision of the defendants. But the contract does not establish the third prong: whether the tasks performed by the medical student during Statham's surgery involved professional skill and judgment. Cf. *Garden City*, 329 Ga. App. at 759-760 (1) (contract between lending employer and borrowing employer was controlling in determining servant's employment status "because it expressly addressed all three prongs of the borrowed-servant rule").

As to the prongs that the contract does address — whether the school yielded control of the medical student during Statham's surgery and whether the medical student was under the immediate supervision of the defendants during Statham's surgery — the contract terms support deeming the medical student to be the defendants' borrowed servant.

Under the section of the contract entitled "Responsibilities of the HOST AGENCY" (which refers to the defendants), the contract provides:

> [T]he HOST AGENCY will provide students . . . with . . . access to patients at HOST AGENCY facilities in an appropriately supervised environment[;]

> The HOST AGENCY will retain full authority and responsibility for patient care and quality standards. . . . While in HOST AGENCY's facilities, students will have the status of trainees; are not to replace

9

HOST AGENCY staff; and, are not to render unsupervised patient care and/or services. . . . HOST AGENCY and its staff will provide such supervision of the educational and clinical activities as is reasonable and appropriate to the circumstances and to the student's level of training[;] and

The HOST AGENCY will resolve any situation in favor of its patients' welfare and restrict a student to the role of observer when a problem may exist until the incident can be resolved by the staff in charge of the student or the student is removed. The HOST AGENCY will notify the SCHOOL'S course director if such an action is required.

Under these provisions, the school yielded control of the medical student and the medical student was under the immediate supervision of the defendants during Statham's surgery.

About the prong the contract does not address — professional skill and judgment — neither party points to evidence. The defendants simply state, with no citation to any evidence or authority, that the medical student "was not exercising any professional skill or judgment." The majority adopts that argument with no supporting analysis apart from an unexplained citation to a case involving "administrative or clerical acts of [a hospital's] employees" that "occur[ ] in an

operating room." See *Ross*, 258 Ga. at 235 (1). And although Statham acknowledged this prong in her appellate brief, she does not address it at all.

So neither the defendants nor Statham has demonstrated entitlement to summary judgment on the borrowed-servant issue. I would affirm the denial of summary judgment to Statham and would reverse the grant of summary judgment to the defendants on the borrowed-servant issue.